## BUTLER v. THOMSON ET AL.

The following memorandum of a contract of sale signed by the agents of the purchaser and the seller, to wit, —

"NEW YORK, July 10, 1867.

" Sold for Messrs. Butler & Co., Boston, to Messrs. A. A. Thomson & Co., New York, seven hundred and five (705) packs first quality Russia sheet-iron, to arrive at New York, at twelve and three quarters (12¾) cents per pound, gold, cash, actual tare.

" Iron due about Sept. 1, '67.

"WHITE & HAZARD, *Brokers.*"

— binds both parties thereto.

ERROR to the Circuit Court of the United States for the Southern District of New York.

*Mr. William M. Evarts* for the plaintiff in error.

*Mr. E. H. Owen, contra.*

MR. JUSTICE HUNT delivered the opinion of the court.

The plaintiff alleged that on the eleventh day of July, 1867, he bargained and sold to the defendants a quantity of iron thereafter to arrive, at prices named, and that the defendants agreed to accept the same, and pay the purchase-money therefor; that the iron arrived in due time, and was tendered to the defendants, who refused to receive and pay for the same; and that the plaintiff afterwards sold the same at a loss of $6,581, which sum he requires the defendants to make good to him. The defendants interposed a general denial.

Upon the trial, the case came down to this: The plaintiff employed certain brokers of the city of New York to make sale for him of the expected iron. The brokers made sale of the same to the defendants at 12¾ cents per pound in gold, cash.

The following memorandum of sale was made by the brokers; viz.: —

"NEW YORK, July 10, 1867.

"Sold for Messrs. Butler & Co., Boston, to Messrs. A. A. Thomson & Co., New York, seven hundred and five (705) packs first-quality Russia sheet-iron, to arrive at New York, at twelve and three-quarters (12¾) cents per pound, gold, cash, actual tare.

"Iron due about Sept. 1, '67.

"WHITE & HAZZARD, *Brokers.*"

The defendants contend, that, under the Statute of Frauds of the State of New York, this contract is not obligatory upon them. The judge before whom the cause was tried at the circuit concurred in this view, and ordered judgment for the defendants. It is from this judgment that the present review is taken.

The provision of the statute of New York upon which the question arises (2 R. S. 136, sect. 3) is in these words: —

"Every contract for the sale of any goods, chattels, or things in action, for the price of fifty dollars or more, shall be void, unless (1) a note or memorandum of such contract be made in writing,

and be subscribed by the parties to be charged thereby ; or (2) unless the buyer shall accept and receive part of such goods, or the evidences, or some of them, of such things in action ; or (3) unless the buyer shall at the time pay some part of the purchase-money."

The eighth section of the same title provides that " every instrument required by any of the provisions of this title to be subscribed by any party may be subscribed by the lawful agent of such party."

There is no pretence that any of the goods were accepted and received, or that any part of the purchase-money was paid. The question arises upon the first branch of the statute, that a memorandum of the contract shall be made in writing, and be subscribed by the parties to be charged thereby.

The defendants do not contend that there is not a sufficient subscription to the contract. White & Hazzard, who signed the instrument, are proved to have been the authorized agents of the plaintiff to sell, and of the defendants to buy ; and their signature, it is conceded, is the signature both of the defendants and of the plaintiff.

The objection is to the sufficiency of the contract itself. The written memorandum recites that Butler & Co. had sold the iron to the defendants at a price named ; but it is said there is no recital that the defendants had bought the iron. There is a contract of sale, it is argued, but not a contract of purchase.

As we understand the argument, it is an attack upon the contract, not only that it is not in compliance with the Statute of Frauds, but that it is void upon common-law principles. The evidence required by the statute to avoid frauds and perjuries — to wit, a written agreement — is present. Such as it is, the contract is sufficiently established, and possesses the evidence of its existence required by the Statute of Frauds.

The contention would be the same if the articles sold had not been of the price named in the statute ; to wit, the sum of fifty dollars.

Let us examine the argument. Blackstone's definition of a sale is " a transmutation of property from one man to another in consideration of some price." 2 Bl. 446. Kent's is, " a contract for the transfer of property from one person to another." 2 Kent, 615. Bigelow, C. J., defines it in these words : " Competent

parties to enter into a contract, an agreement to sell, the mutual assent of the parties to the subject-matter of the sale, and the price to be paid therefor." *Gardner* v. *Lane*, 12 Allen, 39, 43. A learned author says, "If any one of the ingredients be wanting, there is no sale." Atkinson on Sales, 5. Benjamin on Sales, p. 1, note, and p. 2, says, "To constitute a valid sale, there must be (1) parties competent to contract; (2) mutual assent; (3) a thing, the absolute or general property in which is transferred from the seller to the buyer; (4) a price in money, paid or promised."

How, then, can there be a sale of seven hundred and five packs of iron, unless there be a purchase of it? How can there be a seller, unless there be likewise a purchaser? These authorities require the existence of both. The essential idea of a sale is that of an agreement or meeting of minds by which a title passes from one, and vests in another. A man cannot sell his chattel by a perfected sale, and still remain its owner. There may be an offer to sell, subject to acceptance, which would bind the party offering, and not the other party until acceptance. The same may be said of an optional purchase upon a sufficient consideration. There is also a class of cases under the Statute of Frauds where it is held that the party who has signed the contract may be held chargeable upon it, and the other party, who has not furnished that evidence against himself, will not be thus chargeable. Unilateral contracts have been the subject of much discussion, which we do not propose here to repeat. In *Thornton* v. *Kempster*, 5 Taunt. 788, it is said, —

"Contracts may exist, which, by reason of the Statute of Frauds, could be enforced by one party, although they could not be enforced by the other party. The Statute of Frauds in that respect throws a difficulty in the way of the *evidence*. The objection does not interfere with the substance of the contract, and it is the negligence of the other party that he did not take care to obtain and preserve admissible evidence to enable himself also to enforce it."

The statute of 29 Car. II., c. 3, on which this decision is based, that "no contract for the sale of goods, wares, and merchandise, for the price of £10 sterling or upwards, shall be allowed to be good except the buyer," &c., is in legal effect the same

as that of the statute of New York already cited.   See *Justice* v. *Lang,* 42 N. Y. 203, that such is the effect of the statute of New York.

The case before us does not fall within this class.   There the contract is signed by one party only; here both have signed the paper; and, if a contract is created, it is a mutual one. Both are liable, or neither.

Under these authorities, it seems clear that there can be no sale unless there is a purchase, as there can be no purchase unless there be a sale.   When, therefore, the parties mutually certify and declare in writing that Butler & Co. have sold a certain amount of iron to Thomson & Co. at a price named, there is included therein a certificate and declaration that Thomson & Co. have bought the iron at that price.

In *Radford* v. *Newell,* L. R. 3 C. P. 52, the memorandum was in these words: " Mr. H., 32 sacks culasses at 39*s.,* 280 lbs., to wait orders; " signed, " John Williams."   It was objected that it was impossible to tell from this memorandum which party was the buyer, and which was the seller.   Parol proof of the situation of the parties was received, and that Williams was the defendant's agent, and made the entry in the plaintiff's books.   In answer to the objection the court say, " The plaintiff was a baker, who would require the flour, and the defendant a person who was in the habit of selling it; " and the plaintiff recovered.   It may be noticed, also, that the memorandum in that case was so formal as to contain no words either of purchase or sale (" Mr. H., 32 sacks culasses at 39*s.,* 280 lbs., to wait orders "); but it was held to create a good contract upon the parol evidence mentioned.

The subject of bought and sold notes was elaborately discussed in the case of *Sievenright* v. *Archibald,* 6 Eng. L. & Eq. 286; s. c. 17 Q. B. 103; Benj. on Sales, p. 224, sect. 290.   There was a discrepancy in that case between the bought and sold notes.   The sold note was for a sale to the defendant of " 500 tons Messrs. Dunlop, Wilson, & Co.'s pig-iron."   The bought note was for " 500 tons of Scotch pig-iron." The diversity between the bought and sold notes was held to avoid the contract.   It was held that the subject of the contract was not agreed upon between the parties.   It appeared

there, and the circumstance is commented on by Mr. Justice Patteson, that the practice is to deliver the bought note to the buyer, and the sold note to the seller.   He says, " Each of them, in the language used, purports to be a representation by the broker to the person to whom it is delivered, of what he, the broker, has done as agent for that person.   Surely the bought note delivered to the buyer cannot be said to be the memorandum of the contract signed by the buyer's agent, in order that he might be bound thereby ; for then it would have been delivered to the seller, not to the buyer, and *vice versa* as to the sold note."

The argument on which the decision below, of the case we are considering, was based, is that the contract of sale is distinct from the contract of purchase ; that, to charge the purchaser; the suit should be brought upon the bought note ; and that the purchaser can only be held where his agent has signed and delivered to the other party a bought note, — that is, an instrument expressing that he has bought and will pay for the articles specified.   Mr. Justice Patteson answers this by the statement that the bought note is always delivered to the buyer, and the sold note to the seller.   The plaintiff here has the signature of both parties, and the counterpart delivered to him, and on which he brings his suit, is, according to Mr. Justice Patteson, the proper one for that purpose, — that is, the sold note.

We do not discover in *Justice* v. *Lang*, reported in 42 N. Y. 493, and again in 52 N. Y. 323, any thing that conflicts with the views we have expressed, or that gives material aid in deciding the points we have discussed.

The memorandum in question, expressing that the iron had been sold, imported necessarily that it had been bought.   The contract was signed by the agent of both parties, the buyer and the seller, and in our opinion was a perfect contract, obligatory upon both the parties thereto.

*Judgment reversed, and cause remanded for a new trial.*