**COMMISSIONER OF INTERNAL REVENUE v. FREIHOFER, and three other cases.**

**Nos. 6868 to 6871.**

Circuit Court of Appeals, Third Circuit.
March 15, 1939.

788

James W. Morris, Asst. Atty. Gen., and Sewall Key and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., for petitioner.

Milton A. Kamsler, of Philadelphia, Pa., for respondents Grosscup.

Israel Packel, of Philadelphia, Pa., for respondents Greisler.

Harry J. Alker, Jr., of Philadelphia, Pa., for respondent Freihofer.

Before MARIS and CLARK, Circuit Judges, and KALODNER, District Judge.

MARIS, Circuit Judge.

These petitions by the Commissioner of Internal Revenue to review four decisions of the Board of Tax Appeals present for our determination a single question. It is this. Is a total loss which is suffered by a land owner as a result of the foreclosure of a mortgage upon his land which had been given by a prior owner, a loss resulting from the sale of a capital asset within the meaning of Section 117 of the Revenue Act of 1934? (26 U.S.C.A. § 101).

In each of the cases before us the mortgaged property, which was admittedly a capital asset as defined by the act, was sold by the sheriff under an execution writ issued in a Pennsylvania statutory foreclosure proceeding for a price which was less than the amount of the mortgage and left nothing for the taxpayer. Each taxpayer claimed the right to deduct the entire amount of the loss under Section 23 of the Revenue Act of 1934, 26 U.S.C.A. § 23. In each case the Commissioner held that the loss resulted from the sale of a capital asset and was accordingly deductible to the extent of $2,000 only, under the express terms of Section 117(d) of the Revenue Act, 26 U.S.C.A. § 101(d). Upon separate petitions filed by the taxpayers the Board of Tax Appeals held that the losses were deductible in their entirety, reversing the Commissioner's action. Greisler et al. v. Commissioner, 37 B.T.A. 542.

Section 23 of the Revenue Act of 1934 provides that "In computing net income there shall be allowed as deductions:

* * * In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise— * * * if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *." 26 U.S.C.A. § 23(e). This language must be read in connection with Section 117, however, which provides that in the case of a taxpayer other than a corporation only certain percentages of "the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income" the percentage being determined by the period for which the property has been held. Subdivision (d) of that section further provides that "Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges."

It will be seen that the decision of the question before us turns upon the meaning to be given to the word "sale" as used in Section 117 of the Revenue Act. If it refers only to voluntary sales by the taxpayers the question must be decided in their favor. If on the other hand it includes a judicial sale conducted in an adversary proceeding for the foreclosure of a mortgage prior in lien to the taxpayer's title the contention of the Commissioner must be sustained.

At first blush it would appear that the word is used in a broad sense since it is without qualification. The question is, however, not so simply resolved. The phrase used in the statute is "the gain or loss recognized upon the sale or exchange of a capital asset." While no modifying words are used it is obvious that the gain or loss referred to is that of the taxpayer and that the capital asset mentioned is likewise his. Viewing the phrase in this light there arises at least a doubt whether the Congress intended to give the word "sale" the broader meaning claimed for it. That doubt makes it appropriate for us to examine the legislative history of the act. (Gay v. Ruff, 292 U.S. 25, 54 S.Ct. 608, 78 L.Ed. 1099, 92 A.L.R. 970), especially the reports of the Congressional committees. Binns v. United States, 194 U.S. 486, 24 S.Ct. 816, 48 L.Ed. 1087; Duplex Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196.

Special treatment for gains and losses resulting from the sale or exchange of capital assets first appeared in the Revenue

Act of 1921, 42 Stat. 227. The report of the Committee on Ways and Means of the House of Representatives[1] clearly discloses that the Congress in introducing these new provisions had in mind voluntary sales by taxpayers and desired to reduce the tax upon capital gains in order to encourage such transactions. The report of the Finance Committee[2] of the Senate discloses the same thought. These provisions were continued in substantially the same form in the Revenue Acts of 1924, 1926, 1928 and 1932. When the Revenue Act of 1934 came under consideration, however, the Congress introduced the new method of taxing gains from the sale or exchange of capital assets which is set forth in Section 117 of the Act and at the same time, as we have seen, limited the deduction of losses from sales or exchanges of capital assets to $2,000 in excess of the gains from such transactions. The reason for this change appears from the following excerpts from the report upon the bill of the Committee on Ways and Means of the House of Representatives:[3]

"Existing law provides in section 101 for a special treatment of the gains and losses resulting from the sale of capital assets held over 2 years. * * *

"Our present system has the following defects:

"First. It produces an unstable revenue—large receipts in prosperous years, low receipts in depression years.

*　*　*　*　*　*

"Third. Taxpayers take their losses within the 2-year period and get full benefit therefrom, and delay taking gains until the 2-year period has expired, thereby reducing their taxes.

*　*　*　*　*　*

"Fifth. In some instances, normal business transactions are still prevented on account of the tax.

"* * * Your committee recommends the following plan:

"First: To measure the gain or loss from the sale of property by an individual according to the length of time he has held the property, only the following percentages of the recognized gain or loss are taken into account for tax purposes:

"One hundred per cent if the capital asset has been held for not more than 1 year;

"Eighty per cent if the capital asset has been held for more than 1 year but not more than 2 years;

*　*　*　*　*　*

"It is believed that the adoption of this plan (see Sec. 117 of the bill) will result in much greater stability in revenue, will give all taxpayers equal treatment, will encourage normal business transactions, and will yield substantially greater revenue. * * *"

These statements, which were quoted with approval by the Finance Committee of the Senate in its report upon the bill,[4] show quite convincingly that it was the intent of the Congress to deal in Section 117 with gains and losses resulting from the voluntary sale of capital assets. The Committee said that the plan of taxation contained in the act was "to measure the gain or loss from the sale of property by an individual according to the length of

---

[1] House Report No. 350, 67th Cong. 1st Sess., which contained these pertinent comments:

"Section 206: The sale of farms, mineral properties, and other capital assets is now seriously retarded by the fact that gains and profits earned over a series of years are under the present law taxed as a lump sum (and the amount of surtax greatly enhanced thereby) in the year in which the profit is realized. Many such sales, with their possible profit taking and consequent increase of the tax revenue, have been blocked by this feature of the present law. In order to permit such transactions to go forward without fear of a prohibitive tax, the proposed bill, in section 206, adds a new section (207) to the income tax, providing that where the net gain derived from the sale or other disposition of capital assets would, under the ordinary procedure, be subjected to an income tax in excess of 15 per cent, the tax upon capital net gain shall be limited to that rate. It is believed that the passage of this provision would materially increase the revenue, not only because it would stimulate profit taking transactions but because the limitation of 15 per cent is also applied to capital losses. Under present circumstances there are likely to be more losses than gains."

[2] Senate Report No. 275, 67th Cong. 1st Sess.

[3] House Report No. 704, 73rd Cong. 2d Sess.

[4] Senate Report No. 558, 73rd Cong. 2d Sess.

time he has held the property." It would be difficult to find a clearer statement of the Congressional intent than this. We think it compels the conclusion that the sales of capital assets referred to in Section 117 are those sales only which are voluntarily made by a taxpayer and that judicial sales made by the sheriff in execution of a judgment in a proceeding for the foreclosure of a mortgage given by a prior owner are not included.

▮ This conclusion is in consonance with the generally accepted meaning of the word. Blackstone defined a sale as "a transmutation of property from one man to another in consideration of some price or recompense in value." 2 Bl. 446. It is a contract for the transfer of property from one person to another for a valuable consideration. See 7 Words and Phrases, First series, Sale, page 6291. There must be parties standing to each other in the relation of buyer and seller, their minds must assent to the same proposition, and a consideration must pass. Butler v. Thomson, 92 U.S. 412, 23 L.Ed. 684. Where the word is used, in the absence of anything to the contrary it will be assumed that the word is intended to have its usual signification. De Ganay v. Lederer, 250 U.S. 376, 39 S.Ct. 524, 63 L.Ed. 1042; State v. Colonial Club, 154 N.C. 177, 69 S.E. 771, 31 L.R.A., N.S., 387, Ann.Cas.1912A, 1079. That signification includes voluntary action by the owner and a consideration. Here the taxpayer, the owners of the properties involved in the foreclosures, were not parties to the sheriff's sales, nor did they receive any part of the price obtained at those sales. These were, therefore, not sales in the ordinary sense. On the contrary they were adverse judicial proceedings whereby the titles of the taxpayers were extinguished, as we shall presently point out, without any recompense.

▮ The same conclusion we think must be reached when the case is considered from another viewpoint. When land is conveyed subject to the lien of an existing mortgage the conveyance passes only the grantor's equity of redemption. While this is now regarded as a legal title (Clark v. Reyburn, 75 U.S. 318, 8 Wall. 318, 19 L.Ed. 354), it is extinguished by a sale under a judgment in a Pennsylvania fore-

closure proceeding. Hartman v. Ogborn, 54 Pa. 120, 93 Am.Dec. 679. As Chief Justice Woodward said in the case just cited, page 123: "The writ must issue against the mortgagor, his heirs, executors or administrators, and its effect, when followed out to a sale, is to extinguish the equity of redemption, and to transfer the estate to the purchaser as fully as it existed in the mortgagor at the date of the mortgage." It is the title of the mortgagor which is conveyed by the foreclosure sale rather than the title of the terre-tenant, whose equity of redemption is cut off and disappears. It will thus be seen that in the cases before us the taxpayers lost only their equities of redemption in the properties foreclosed and these interests were not conveyed by the foreclosure sales but rather were extinguished by them.

▮ Furthermore it is apparent, in view of the sum realized at the foreclosure sale in each of these cases, that the taxpayers' equities in their respective properties had become wholly worthless at the time of foreclosure. This was conclusively demonstrated by the fact that the sums realized failed in each case to meet the amount of the mortgage. The taxpayers' losses resulted from the fact that their equities had become worthless and not from the sale of these equities. One cannot sell what has wholly disappeared. Consequently the foreclosure sales had no reality as sales so far as the taxpayers' equities of redemption were concerned. Even in the case of a voluntary transaction it is necessary in order to realize a loss by sale that the interests sold must have some remaining value, otherwise the sale is a pure fiction and cannot form the basis for a loss which is deductible for tax purposes. De Loss v. Commissioner, 2 Cir., 28 F.2d 803; Schmidlapp v. Commissioner, 2 Cir., 96 F.2d 680, 118 A.L.R. 297. It follows that while the foreclosure sales were undoubtedly the identifiable events which pointed out the worthlessness of the taxpayers' equities they did not cause the losses and consequently the provisions of Section 117 do not apply even though it should be held that the sales referred to in that section included foreclosure sales.

The decisions of the Board of Tax Appeals are affirmed.