## COMMISSIONER OF INTERNAL REVENUE v. ELECTRO-CHEMICAL ENGRAVING CO., Inc.

### No. 221.

Circuit Court of Appeals, Second Circuit.

March 18, 1940.

Writ of Certiorari Granted June 3, 1940.

See 60 S.Ct. 1097, 84 L.Ed. ——.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., for the Commissioner of Internal Revenue.

Barron, Rice & Rockmore, of New York City (Bernard S. Barron, of New York

City, of counsel), for respondent Electro-Chemical Engraving Co., Inc.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question before us is whether a loss sustained by the taxpayer Electro-Chemical Engraving Co., Inc., through a sale of its factory by foreclosure should be limited to $2,000 by reason of Section 117 (d) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev. Acts, instead of being deductible to the extent of the excess of the adjusted basis over the amount realized, as provided in Sec. 111 (a), 26 U.S.C.A. Int.Rev.Acts.

The Board of Tax Appeals determined that the taxpayer was entitled to deduct the actual loss realized and that after such deduction there was no deficiency in excess profits tax for the year 1935. If the deduction was limited to $2,000 there would be a deficiency of $2,547.08 in excess-profits tax and the order of the Board should be modified so as to adjudge that deficiency as assessed by the Commissioner. In our opinion the Commissioner was right in holding that Section 117 (d) applied and that the deductible loss in capital assets was only $2,000 and that a deficiency of $2,547.08 in excess-profits tax existed.

Under Section 23 (j) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, it is provided that: "Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117 [101] (d). * * *"

Section 117 (d) of the Act of 1934 provides that:

"(d) Limitation on capital losses. Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. * * *"

In Section 117 (b), 26 U.S.C.A. Int.Rev. Acts, capital assets are thus defined:

"(b) Definition of capital assets. For the purposes of this title, 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

The taxpayer's factory, which clearly was a "capital asset", was subject to a purchase money mortgage. Because of defaults in payment of principal and interest, one Weinbaum, who had become the owner of the mortgage by assignment, started a suit to realize the amount of his lien by foreclosure. At the foreclosure sale, on March 7, 1935, the property was bid in by one Bergman for $21,000 leaving a deficiency of $30,428.33, and on March 22, 1935, the referee, pursuant to the decree of foreclosure, executed a deed conveying the premises to the purchaser. The latter did not attempt to enforce the deficiency against the taxpayer under the provisions of Section 1083-a of the New York Civil Practice Act so that under that section the proceeds must be deemed "in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist."

The question before us is whether the Commissioner was right in claiming that the transfer of the factory to Bergman by the referee was a "sale" within the meaning of Section 117 (d) of the Revenue Act so that the deductible loss in capital assets fixed thereby was limited to $2,000. Otherwise, Section 23 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, would be applicable, which provides that:

"In computing net income there shall be allowed as deductions: * * *

"(f) Losses by corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

In Commissioner v. Freihofer, 102 F.2d 787, 125 A.L.R. 761, the Circuit Court of Appeals for the Third Circuit held that a transfer of mortgaged property to a third party as the result of a foreclosure sale was not a "sale" within the meaning of Section 117 (d) because that section only related to sales voluntarily made and not to transfers as a result of decrees of foreclosure, which the court regarded as involuntary so far as the mortgagors are concerned.

The respondent relies on the decision in Commissioner v. Freihofer, supra, and that of the Sixth Circuit in Commissioner v. Hammel, 6 Cir., 108 F.2d 753, to negative the Commissioner's ruling that the case at bar is governed by Sec. 117 (d). In Commissioner v. Hammel, supra, the court laid stress on the law of Michigan, where the real estate involved was situated. That law

permitted the interest of a mortgagor or of a purchaser who had defaulted under a contract for the sale of land to be barred by a decree of "strict foreclosure". The court held that termination of the interest of the legal or equitable owner of real estate by such a decree could not reasonably be regarded as a sale and that a sale by a sheriff in a foreclosure suit to which a mortgagor or a vendee who had defaulted on his contract of purchase was not a party was also not a sale within Sec. 117 (d) and that the taxpayers should be allowed their capital loss, and not be subjected to the limitation of $2,000.

■■ We feel compelled to differ with the foregoing decisions and to hold that Sec. 117 (d) applies to the present case and precludes the allowance of a deduction of more than $2000. Section 117 (d) does not confine the meaning of the word "sale" to voluntary transfers by the taxpayer nor can we see any reason for discriminating between the liquidation of a taxpayer's interest through sales made by himself and sales made by an officer of the court.

We should be surprised if a taxpayer who had pledged securities with a broker and had them sold out on the Stock Exchange could obtain a deduction of more than $2000 for a capital loss incurred through such a liquidation. If the sale were made at the pledgor's request it could not be doubted that 117 (d) would apply and that no loss in excess of $2,000 could be deducted for income tax purposes. Rogers v. Commissioner, 9 Cir., 103 F.2d 790. Likewise, if the customer realized a gain through such a liquidation he would be entitled to limit his taxable gain in computing net income to the percentages provided by Section 117 (a), 26 U.S.C.A. Int.Rev.Acts. It cannot be supposed that it would make any difference whether a pledgee ordered or merely suffered his securities to be sold by his broker, and we think that in either event he could limit his taxable gain by the percentages under Section 117 (a) and could take a deduction of only $2,000 for any loss that he might suffer. We see no valid distinction between a sale by a broker who holds his customer's securities and a sale of mortgaged real estate by means of a decree in foreclosure. If Section 117 (d) does not include cases of strict foreclosure that fact is not persuasive of the result to be reached here. Strict foreclosure is a procedure now existing in but few states

of the union and is no longer permissible in New York where the real estate in question was situated. Moulton v. Cornish, 138 N. Y. 133, 33 N.E. 842, 20 L.R.A. 370; Tiffany Real Property (2nd Ed.) § 650.

Bingham v. Commissioner, 2 Cir., 105 F.2d 971 is not in conflict with the decision we have reached. In the Bingham case it was held that the vendor-mortgagee might deduct his full loss resulting from cancellation of notes secured by a purchase money mortgage and taking back the property in exchange. It is true that the situation somewhat resembled one where there is a foreclosure sale without deficiency judgment. But the Bingham case involved taxation of the *mortgagee,* who could be said only to have "sold" the notes. That a cancellation of notes is not a "sale" of them to their maker was the ground the court relied on. It did not determine that the *mortgagor* did not "sell" the real estate to the mortgagee, with the cancellation of the notes as consideration. In Rogers v. Commissioner, 9 Cir., 103 F.2d 790, the Ninth Circuit held in similar circumstances that the mortgagors had effected a sale and confined their deductible loss to the statutory limitation. Between a situation adjusted by cancellation of the mortgage notes in return for a "voluntary" deed of the land, when the adjustment is made with knowledge of the possible resort to foreclosure, and a situation where foreclosure is actually resorted to, there would seem to be little difference. In both situations, the result is the same: the mortgagee receives back the land, and the mortgagor is freed of liability on the mortgage notes, to some extent at least.

■ If capital losses were limited to $2,000 only in case of voluntary sales a taxpayer could frequently secure the benefit of an ordinary loss deduction through liquidation of pledged or mortgaged property by a friendly broker or mortgagee. It seems to us quite unlikely that the national revenue can be affected by such distinctions or by the accident of who causes the sale to be made. It is enough if there is an identifiable event by way of sale or exchange resulting in the realization of a loss or gain.

The order of the Board is reversed and the cause remanded for recomputation of the deficiency after disallowing all but $2000 of the loss involved herein.