**WELCH, Former Collector of Internal Revenue, v. STREET et al.**

No. 3596.

Circuit Court of Appeals, First Circuit.

Jan. 23, 1941.

954

Edward First, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Edmund J. Brandon and C. Keefe Hurley, both of Boston, Mass., on the brief), for appellant.

Edward C. Thayer, of Boston, Mass. (Loring P. Jordan, Jr., of Boston, Mass., on the brief), for appellees.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAGRUDER, Circuit Judge.

This is a suit to recover income taxes for the year 1935 alleged to have been illegally collected by the defendant. In the judgment below, the plaintiffs have been allowed recovery for the full amount of their claim, $9,556.58, with interest.

The plaintiffs are husband and wife. They filed an amended joint return, according to .which no tax was payable. Losses which had been sustained by the wife on three separate parcels of real estate were entered on the return as ordinary losses under Section 23(e) (2) of the Revenue Act of 1934, 48 Stat. 680, 26 U.S.C.A. Int. Rev.Code, § 23(e) (2). The Commissioner, in his adjustment, transferred these losses to capital losses, under Section 117(d), 26 U.S.C.A. Int.Rev.Acts, page 708, which permits losses from sales or exchanges of capital assets to be deducted only to the extent of $2,000 plus gains, if any, from such sales or exchanges. Moreover, the Commissioner refused to allow these losses suffered by the wife to be deducted from the gross income of the husband, who had capital gains during the taxable year. A deficiency tax was accordingly assessed and collected from the taxpayers.

In respect to one of the three parcels here involved, the real estate situate at 27–29 Province Street, Boston, appellant conceded in the court below, and made no contention to the contrary on appeal, that the Commissioner was in error in classifying the loss as a capital loss under Section 117. Hence we assume the correctness of the District Court's ruling that this particular loss was an ordinary loss, deductible under Section 51(b) (2), 26 U.S.C.A. Int. Rev.Acts, page 683, from the aggregate gross income of husband and wife.

Chiefly, the controversy relates to the loss on certain real estate situate at 411–419 Washington Street, Brookline, Massachusetts. This property was acquired in 1929 by Emma L. Street, one of the appellees, upon foreclosure of a second mortgage held by her at a cost of $280,155.50. She took the property subject to an existing first mortgage of $200,000, of which $188,000 remained unpaid, but made no agreement to assume or pay the mortgage debt. In 1935 the property was sold upon foreclosure of the underlying first mortgage and Mrs. Street's entire investment was thereby lost.

The District Court [30 F.Supp. 396], deeming the precise question to have been decided in favor of the taxpayer in Commissioner v. Freihofer, 102 F.2d 787, 125 A.L.R. 761, concluded that Section 117(d) referred only to "voluntary sales and exchanges of capital assets by the taxpayer"; and therefore held that the loss should be treated as an ordinary loss under Section 23(e).

After the decision below, and after the argument before us on appeal, the Supreme Court considered the proper interpretation of Section 117(d) in Helvering v. Hammel, 61 S.Ct. 368, 85 L.Ed. ——, decided January 6, 1941, and in the companion case of Electro-Chemical Engraving Co. v. Commissioner, 61 S.Ct. 372, 85 L.Ed. ——, decided the same day. They were both cases in which the taxpayer had given a purchase-money mortgage upon buying the property, and subsequently had suffered a loss when

the property was sold pursuant to a foreclosure decree. The Supreme Court held that the resulting losses should be treated as losses from the "sale" of capital assets within the meaning of Section 117(d).

It is suggested that even though the loss suffered by the taxpayer in the Hammel case is a capital loss within Section 117(d), the facts in the case at bar are distinguishable. The argument is that in the Hammel case the mortgage debt had been created by the taxpayer; that the subsequent foreclosure sale pursuant to a power in the mortgagee thus conferred by voluntary act of the taxpayer might in a sense be considered as "not entirely involuntary" with respect to the taxpayer-mortgagor; that the taxpayer received consideration for the transfer of his interest to the purchaser at the foreclosure sale to the extent that as mortgagor he was thereby discharged of liability on the mortgage debt. In the present case, the argument continues, the taxpayer had not created the underlying first mortgage, had assumed no liability on the mortgage debt, and had received no consideration from the foreclosure sale; her interest was not transferred to the purchaser but was merely extinguished as a result of the sale.

This is a conceivable distinction, but we do not feel free to introduce such a refinement in view of the discussion in the Hammel opinion. The Supreme Court stated that Congress had indicated a clear purpose to offset gains from the sale of capital assets by losses from the sale of like property and upon the same percentage basis as that on which the gains are taxed, Section 117 (a). "This purpose to treat gains and deductible losses on a parity but with a further specific provision provided by § 117 (d) of the 1934 Act, permitting specified percentages of capital losses to be deducted from ordinary income to the extent of $2,000, would be defeated in a most substantial way if only a percentage of the gains were taxed but losses on sales of like property could be deducted in full from gross income. * * * We can find no basis in the language of the Act, its purpose or its legislative history, for saying that losses from sales of capital assets under the 1934 Act, more than its predecessors, were to be treated any differently whether they resulted from forced sales or voluntary sales." [61 S.Ct. 371, 85 L.Ed. ——.] The court discovered "a consistent legislative policy to enlarge the class of deductible losses made subject to the capital assets provisions without regard to the voluntary action of the taxpayer in producing them." In this connection the court pointed out that the act treated as losses from sales or exchanges "the loss sustained from redemption of stock, § 115(c), retirement of bonds, § 117(f), losses from short sales, § 117(e) (1), and loss sustained by failure of the holder of an option to exercise it, § 117(e) (2), 26 U.S.C.A. Int.Rev. Acts, pages 703, 708, although none of these transactions involves a loss from a sale."

Considering the underlying purpose of Congress in its treatment of capital gains and losses, it can hardly be supposed that Congress had in mind a contrast between the transfer of the mortgagor's interest upon foreclosure sale in the Hammel case and the "mere extinguishment" of the taxpayer's interest in the case at bar upon foreclosure of the underlying first mortgage. Analytically any transfer of property involves the extinguishment of interests in one person and the creation of interests in another. See American Law Institute, Restatement of Property, § 13. In the Hammel case, before default, the mortgagor had a beneficial interest in the enjoyment of the rents and profits of the land. As a result of the foreclosure sale this interest was extinguished, and an unencumbered beneficial interest was created in the purchaser. So, in the case at bar, prior to default under the first mortgage, Mrs. Street had a beneficial interest in the enjoyment of the rents and profits of the land. She could have preserved that interest, had she paid the mortgage debt; instead, she chose to suffer a foreclosure sale. The sale extinguished her interest and created in the purchaser an unencumbered beneficial interest. It is true, no consideration moved to her as a result of the sale. This, however, was because her equity had become worthless, the sale being merely "the definitive event establishing the loss within the meaning and for the purpose of the revenue laws," as the court stated in the Hammel case. If the bid price had been in excess of the first mortgage debt, the surplus would have gone to Mrs. Street in payment for the extinguishment of her interest, just as any such surplus in the Hammel case would have gone to the mortgagor.

In view of the decision in the Hammel case, we believe the court below should

have upheld the Commissioner's action in treating the loss from the sale of the Brookline property as a loss from the sale of a capital asset under Section 117(d).

The third loss involved in the present litigation was a very small one and counsel gave it scant attention. In 1917 Mrs. Street acquired by inheritance an interest in land situate in Seattle, Washington. In 1935 her interest in that property was lost through a tax sale which, according to the stipulation of facts, "she in no way authorized or consented to". We think that this loss also falls within the reasoning of the Hammel case, and that the court below should have upheld the Commissioner's action in classifying it as a loss from the sale of a capital asset under Section 117(d).

But although the Commissioner was right in treating the losses from the sales of the Brookline and Seattle properties as capital losses under Section 117(d), he was in error in not allowing the capital losses of the wife to be deducted from the capital gains of the husband, a joint return having been filed. This point has been settled by the Supreme Court in the recent case of Helvering v. Janney, 61 S.Ct. 241, 85 L.Ed. —, decided December 9, 1940.

Thus it appears that the plaintiffs are entitled to recover something, though on the record we cannot say how much. A recomputation becomes necessary.

The judgment of the District Court is vacated and the case is remanded to that court for further proceedings in conformity with this opinion.