## COMMISSIONER OF INTERNAL REVENUE v. COGGAN.

## COGGAN v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 3576, 3577.

Circuit Court of Appeals, First Circuit.
May 2, 1941.

F. E. Youngman, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and S. Dee Hanson, Sp. Assts. to Atty. Gen., on the brief), for Commissioner.

David Burstein, of Boston, Mass., for Coggan.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

These are cross-petitions for review of a decision of the Board of Tax Appeals redetermining a deficiency in the taxpayer's income tax for the year 1935. The question presented by the Commissioner's petition is whether two losses, conceded to have been sustained by the taxpayer in 1935, are ordinary losses entitled to full deduction, or are losses "from sales or exchanges of capital assets" entitled to be deducted only to the limited extent provided in § 117 of the Revenue Act of 1934, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, page 707. If the losses are found to be of the latter sort it will be unnecessary to decide the question raised by the taxpayer's cross-petition as to the proper basis to the taxpayer of the property involved in one of the transactions.

The first of the two transactions concerns 254 shares of stock of the Quincy Mining Company, a Michigan corporation. These shares were purchased by the taxpayer in 1931 at a cost of $1,460.50. Assessments on this stock in 1932 and 1933 amounted to $254, making the total cost to the taxpayer $1,714.50. In 1934 further assessments totalling $1 a share were made. The taxpayer having failed to pay these assessments, the corporation in September, 1935, duly sold the shares at public auction in accordance with the provisions of 1931 Mich.Stats. No. 327, § 28.[1] According to the stipulation of facts, "The market value of the stock, subject to said assessments, on or about the said date of sale was approximately 70 to 92 cents per share." We were informed at the oral argument that this somewhat ambiguous statement means that even if the taxpayer had paid up the assessments of $1 a share, the stock thereafter in his hands would still have been worth less than the amount of the delinquent assessments. In his return for 1935 the taxpayer deducted in full the resulting loss of $1,714.-50 on the theory that it was an ordinary loss. The Commissioner, however, ruled that the loss was from the "sale or exchange" of a capital asset, and therefore held that the loss could be recognized only to the extent of 60%, or $1,028.70, as provided in § 117 (a) of the Revenue Act of 1934. The Board of Tax Appeals reversed the Commissioner on this point, ruling that the loss was an ordinary loss.

The second transaction is somewhat more involved, but for purposes of this case a simplified statement of it will suffice:

In 1927 the taxpayer advanced $10,000 to one George H. Bruce and received as security a mortgage on certain real estate in Boston. The mortgage was executed by Eva M. Cann who was the owner of record of the property as a straw for Mr. Bruce. The debt secured by the mortgage was evidenced by a note for $10,000 on which Miss Cann appeared as maker. Mr. Bruce did not endorse the note. The maker was a person of no financial responsibility.

On March 24, 1930, the taxpayer, acting under a statutory power of sale contained in the mortgage, foreclosed it by selling the property at public auction. The successful bidder was the mortgagor, Miss Cann, again acting as straw for Mr. Bruce. Though the bid price was nominally $7,500, no money actually changed hands. The deed executed pursuant to the sale conveyed the property to Miss Cann subject only to unpaid taxes. At the same time, by prearrangement, Miss Cann gave the taxpayer a new mortgage for $10,000. The purpose of this somewhat peculiar transaction does not appear from the record.

Local real estate taxes assessed on April 1, 1929, being in arrears, there was a tax sale by the city of Boston on August 26, 1930, in accordance with Mass.G.L., c. 60, and the city became the purchaser at the sale. Under the Massachusetts law, the bid price at the sale was of necessity the amount of the unpaid taxes and interest. § 43. The owner remains in possession, with a statutory right of redemption which persists until final foreclosure, proceedings for which cannot be instituted until the lapse of two years. Mass.G.L., c. 60, §§ 62, 65.

In 1932 Miss Cann conveyed her equity of redemption "subject to all unpaid taxes, outstanding tax titles and assessments if any there are", to Norine C. Murphy, a straw for the taxpayer. The conveyance was made in lieu of foreclosure by the taxpayer, and as part of the arrangement it was understood that the taxpayer would make no further claim against Miss Cann or Mr. Bruce personally on account of the mortgage debt.

On September 13, 1935, in accordance with the provisions of Mass.G.L., c. 60, § 65, the city of Boston filed a petition in the land court to foreclose all right of redemption remaining after the tax sale of August 26, 1930. A final decree was entered by the land court on December 14, 1935, forever foreclosing all rights to redeem by the owner of the equity, mortgagee or creditors. At this time allowable depreciation on the property since its ac-

---

[1] "When any shareholder fails to pay any call upon his stock properly made by the directors at the time when such payment is due, the directors may collect the amount of such call or any balance thereof, remaining unpaid, from such delinquent shareholder by an action at law, or they may sell at public sale such part of the shares of such delinquent shareholder as will pay all or any part of the assessments then due from him with interest and all incidental expenses, and shall transfer the shares so sold to the purchaser, who shall be entitled to a certificate therefor. * * *"

quisition by the taxpayer amounted to $1,016.63.

In his income tax return for 1935 the taxpayer deducted as an ordinary loss on this real estate transaction the sum of $8,983.37 which represents the difference between the original investment of $10,000 and the allowable depreciation. The Commissioner in his notice of deficiency ruled that the loss was recognizable only to the extent of $3,890.02. This figure was arrived at by taking the cost or basis to the taxpayer as $7,500 (the amount of the bid price at the foreclosure sale on March 24, 1930); deducting therefrom the allowable depreciation; and taking 60% of the resulting figure on the theory that the loss was from the sale or exchange of a capital asset within the meaning of § 117.

The Board ruled that the Commissioner was wrong in not classifying the loss as an ordinary loss, on the strength of its earlier decision in Nebraska Bridge Supply & Lumber Co. v. Com'r, 40 B.T.A. 40; but held that the Commissioner rightly determined the basis to the taxpayer to be $7,500.

We think the Board was in error in classifying the two losses as ordinary losses. The applicable sections of the revenue act and of the corresponding regulations are set forth in the footnote.[2]

As to the loss on the sale of the stock in the Michigan corporation the question seems completely foreclosed by Helvering v. Hammel, 61 S.Ct. 368, 85 L.Ed. ——, 131 A.L.R. 1481 and Electro-Chemical Engraving Co. v. Commissioner, 61 S.Ct. 372, 85 L.Ed. ——, both decided by the Supreme Court January 6, 1941. In a sense the sale was an involuntary one, but these two cases make clear that the sale need not be by voluntary action of the taxpayer in order to be a "sale or exchange" within the meaning of § 117. That there was literally a sale is unquestionable. Moreover, the taxpayer received consideration from the sale, because under the Michigan statute the corporation could in the alternative have sued the taxpayer for the assessment in an action at law, and the sale at public auction relieved the taxpayer of this liability. The situation is therefore analogous to the sale of an asset by a pledgee, with the proceeds applied to paying off the debt secured by the pledge.

The taxpayer now urges that the stock had become worthless prior to the sale at public auction. Under the 1934 act, securities which had become utterly worth-

[2] Revenue Act of 1934, 48 Stat. 680.

"§ 23. Deductions from Gross Income

"In computing net income there shall be allowed as deductions: * * *

"(e) Losses by Individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise— * * *

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or * * *

"(j) Capital losses. Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117(d)." 26 U.S.C.A.Int.Rev. Acts pages 672, 673.

"§ 117. Capital Gains and Losses

"(a) General Rule. In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

"100 per centum if the capital asset has been held for not more than 1 year;

"80 per centum if the capital asset has been held for more than 1 year but not for more than 2 years;

"60 per centum if the capital asset has been held for more than 2 years but not for more than 5 years;

"40 per centum if the capital asset has been held for more than 5 years but not for more than 10 years;

"30 per centum if the capital asset has been held for more than 10 years. * * *

"(d) Limitation on Capital Losses. Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. * * *"

Regulations 86:

"Art. 23 (e)-1. Losses by individuals.— * * *

"In general losses for which an amount may be deducted from gross income must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed."

"Art. 117-4. Application of section 117 generally.—Section 117 applies only to gains and losses upon the sale or exchange of capital assets and, therefore, has no application to loss of useful value upon the permanent abandonment of the use of property (see article 23 (2)-3), or loss sustained as the result of corporate stock or debts becoming worthless."

less could be charged off as an ordinary loss during the year in which they became valueless; it was not until recently that this somewhat incongruous result was changed by amendment of the revenue act providing that losses resulting from securities becoming worthless should be treated in the same way as losses from the sale or exchange of capital assets. Rev.Act of 1938, § 23(g), (k), 52 Stat. 447, 461, 26 U.S.C.A. Int.Rev. Acts, page 1013. The taxpayer's argument, therefore, is that since his stock had become worthless during 1935, he thereby became entitled to a full deduction for an ordinary loss, and the subsequent sale was of no tax significance.

But the stock in fact had not become worthless. It was worth, according to the stipulation of facts, from 70 to 92 cents a share. It is true that the stock in the hands of the taxpayer was subject to an assessment of $1 a share. Since this assessment could be recovered in an action at law it represented an actual debt of the taxpayer to the corporation; in fact, a part of the purchase price of the stock. Naturally, the taxpayer lost interest in his investment when it appeared that the value of the stock had fallen to a point below the amount of the unpaid purchase price. What the taxpayer had already put into the investment was thus irretrievably a total loss; but his capital asset was the stock, and this had a substantial market value. The sale of this asset at public auction in 1935 was the identifiable event which extinguished his interest in the stock and established his loss. Before the Commissioner, and before the Board, the taxpayer based his claim not upon the ground that the loss had been suffered on account of the stock having become worthless, but rather on the ground that he had sustained a loss "by forfeiture" of the shares of stock as a result of a sale at public auction, and that this was not a "sale or exchange" of a capital asset within the meaning of § 117. This was also the position taken by the Board in its decision, relying on Commissioner v. Freihofer, 3 Cir., 102 F.2d 787, 790, 125 A.L.R. 761. But that case rested on the view, no longer tenable since the decision of the Supreme Court in the Hammel case, "that the sales of capital assets referred to in Section 117 are those sales only which are voluntarily made by a taxpayer."

We think also that the Board was in error in holding that the real estate loss was an ordinary loss. As a fresh question we should have had difficulty in saying that the extinguishment of the taxpayer's interest by the decree of the land court in 1935 foreclosing his right of redemption after the so-called tax sale in 1930, was a "sale or exchange" within the meaning of the statute. There is some force to the contention that the Hammel case, and our decision in Welch v. Street, 1 Cir., 116 F.2d 953, are distinguishable in that in each of these cases the taxpayer's interest was extinguished by a "sale", namely, a foreclosure sale in which the property was actually sold to the highest bidder; whereas in the case at bar the property was not put up for sale in 1935, but the taxpayer's right of redemption was forfeited in that year by the decree of the land court. However, the point is no longer open. In Helvering v. Nebraska Bridge Supply & Lumber Co., 8 Cir., 115 F.2d 288, which disclosed a situation almost exactly on all fours with the case at bar, the circuit court of appeals affirmed a ruling of the Board that the loss was an ordinary loss and not a loss from the sale of a capital asset. This case, however, was reversed per curiam in Helvering v. Nebraska Bridge Supply & Lumber Co., 61 S.Ct. 827, 85 L.Ed. ——, decided by the Supreme Court on April 1, 1941, upon the authority of the Hammel case. See, also, Commissioner v. Peterman, 9 Cir., April 4, 1941, 118 F.2d 973. Certainly, the result is sensible enough; no reason is apparent why the taxpayer should be treated more favorably in respect to the real estate loss in the case at bar than were the taxpayers in respect to the real estate losses in the Hammel and Street cases.

Since we hold that the two losses in question were capital losses we do not need to consider the cross-petition which raises an issue as to the proper basis of the real estate to the taxpayer. If we accept for purposes of argument the Commissioner's contention that the basis is $7,500 rather than $10,000, the permissible recognition of loss under § 117 (a) would be $3,890.02, as has been pointed out above. The permissible recognition of loss on the transaction in the stock of the Michigan corporation is $1,028.70. These items make a total of $4,918.72 as the recognizable loss in the two transactions. But under § 117 (d) "Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges." It appears from the taxpayer's return that his capital gains dur-

ing 1935 were $1,978.50. Thus the maximum deduction for losses allowable to the taxpayer is $3,978.50; so, even accepting the smaller basis for the real estate urged by the Commissioner, the taxpayer will achieve his maximum possible deduction, and the question of basis becomes immaterial.

The decision of the Board of Tax Appeals is vacated and the case is remanded to the Board for further proceedings in conformity with this opinion.