PER CURIAM.
The plaintiff, Richard J. Smith, Administrator of the Estate of Ethel B. Smith, appeals from a summary final judgment entered in favor of Orlando Motors, Inc., one of the defendants. We reverse.
On October 9, 1964, Ethel B. Smith was crossing the street when she was struck by an automobile driven by Samuel Sump-ter Baker, Jr. Mrs. Smith received severe injuries from this accident and died as a result. Custody of this automobile had been given to Baker by William Kinney, son of defendant Carolyn W. Kinney.
William Kinney, while employed part time by defendant Orlando Motors, became interested in purchasing the car. The general manager informed him that, since he was a minor, it would be necessary for his mother to sign for the car and to have the title in her name.
On October 1, 1964, Kinney was allowed to take the car home to show his mother and to try it out. A day or so later the general manager spoke with Mrs. Kinney and agreed to accept $30.00 as payment with the balance of $49.00 to be paid at some unspecified future date. Although on October 3 William Kinney delivered a check in the amount of $30.00 to Orlando Motors, no written contract or transfer documents were executed by William Kinney or Carolyn Kinney until after the accident.
Plaintiff brought suit against Samuel Sumpter Baker, Jr., Baker’s parents, Mrs. Kinney and Orlando Motors. One of the key issues was whether a sale of the automobile had been completed prior to the accident.
The trial court granted Orlando Motors, Inc.’s motion for summary judgment ruling that it had no beneficial ownership to the automobile at the time of the accident. No finding was made as to who in fact and in law did own the automobile.
While a presumption of correctness exists in favor of all judgments or decrees of the lower court, we must review the record in the light most favorable to the party against whom a summary judgment has been entered.[1]
Accordingly, we find there is a genuine issue as to a material fact, the existence of which stands as a bar to entry of a summary final judgment.[2] This issue is whether or not there had been a sale *411 of the vehicle in question prior to the time the tort was committed.
Although neither the title certificate nor the transfer documents were executed until after the accident, common law rules governing the sale of automobiles may apply in lieu of compliance with statutory provisions.[3]
A sale contains certain essential elements. For instance, it is essential that there be two parties who stand to each other in the relationship of seller- and buyer.[4]
In the case at hand the purported seller is, of course, Orlando Motors, Inc. But who is the purchaser? The record reflects a clear dispute as to the identity of the intended purchaser, and this is fatal to a finding upon summary judgment that a sale had been consummated. A seller cannot unilaterally sell or convey a chattel out into limbo.
To illustrate the confusion in the instant case plaintiff’s complaint alternatively alleged that the vehicle was owned by' Mrs. Kinney or Orlando Motors, Inc. In the only answer filed Orlando Motors, Inc. denied that it owned the vehicle and stated that Mrs. Kinney owned it.
When asked in whose name the automobile was titled on the day of the accident, Mrs. Kinney deposed:
“Well, to my knowledge it was titled to me. I mean — that is what I thought. I just thought — I just don’t know how to answer that.”
Nevertheless, her affidavit on file stated:
“That my son, William H. Kinney, had possession of the aforementioned 1951 Ford Station Wagon only for the purpose of my inspection and I did not intend for title to said 1951 Ford Station Wagon to pass to me until I executed the papers * *
The general manager of Orlando Motors, Inc. indicated that it was his understanding that the transaction was entirely with Mrs. Kinney and that no ownership of the car was to go to William Kinney. Yet William Kinney at various places in his deposition indicated to the contrary.
He was asked to explain the circumstances surrounding his gaining possession of the car, and replied:
“Well, what do you mean? You mean when I bought it ?”
Later he said:
“Q. How much were you going to purchase this car for?
“A. $75 and tax * * *.
“Q. Was any payments made on this car?
“A. Yes, I paid 30 or $35, I think it was $30.
“Q. When was this payment made?
“A. The day I bought the car.
<< * * *
“Q. Did you make this payment or did your mother make the payment?
“A. My grandmother gave me the money, but I made the payment.
if * * *
“Q. This was supposed to be — you had intended to purchase this automobile for yourself and buy it in your mother’s name?
“A. Yes.

*412 “Q. Did you enter into this understanding with Mr. Potter on the same day you were first shown the automobile?
“A. You mean did I buy it?
“Q. Yes.
“A. Yes.”
Finally, he was asked whether it was his intention that the automobile be owned by him and merely placed in his mother’s name. He .replied, “yes.”
In light of the common law principle that the passing of title between a seller and a buyer depends largely upon the intention of the parties,[5] the above evidence reflects a clear dispute. It might be reasonably inferred that either William Kinney or his mother was the intended purchaser, or alternatively that no purchase was intended pending execution of the papers.
If the testimony of Mrs. Kinney and the general manager of Orlando Motors is taken as true, the intended purchaser was Mrs. Kinney. However, if William Kinney’s testimony is accepted, he was to be the owner of the automobile.
Alternatively, William’s statement indicated that the sale to him was upon the express condition that title be placed in his mother’s name. This condition had not been met at the time of the accident. In such a case delivery creates a presumption that the condition has been waived and that title has passed. This presumption is, however, a rebuttable one.[6]
Since this condition had not been satisfied at the time of the accident, there is an additional unresolved question of fact.
What was the intention of Orlando Motors and William Kinney regarding the condition attached to the sale? Did delivery evidence a waiver of the condition? We cannot say. These questions are for the trier of facts, and are not to be determined upon motion for summary judgment.
Because of the conflicts shown by the record, it cannot be said with the degree of certainty required for entry of summary judgment that a sale had been made and completed.
Reversed.
WALDEN, C. J., and WHITE, JOSEPH S., Associate Judge, concur.
CROSS, J., dissents with opinion.

. Sullivan v. Swift & Co., Fla.App.1963, 153 So.2d 30; Rothenberg v. Leevans Corp., Fla.App.1963, 155 So.2d 839.

. P.R.O.P. 1.510(c), 31 P.S.A.

. Palmer v. R. S. Evans, Jacksonville, Inc., Fla.1955, 81 So.2d 635; McAfee v. Killingsworth, Fla.1957, 98 So.2d 738.

. Butler v. Thomson, 1876, 92 U.S. 412, 23 L.Ed. 684; Commissioner of Internal Revenue v. Freihofer, 3 Cir. 1939, 102 F.2d 787, 125 A.L.R. 761.

. E. g., Palmer v. R. S. Evans, Jacksonville, Inc., supra note 3.

. See Young v. Kansas Manufacturing Co., (1887) 23 Fla. 394, 2 So. 817.