## BLUM v. COMMISSIONER OF INTERNAL REVENUE.
### No. 54.

Circuit Court of Appeals, Second Circuit.

Feb. 9, 1943.

Benjamin Mahler, of New York City, for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Samuel H. Levy, and Mary- helen Wigle, Sp. Assts. to Atty. Gen., for Commissioner of Internal Revenue.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The Commissioner of Internal Revenue assessed a deficiency of $1,638.10 in the income tax of Aaron Blum for the year 1936. In 1940 the taxpayer filed a petition with the Board of Tax Appeals for a redetermination of the deficiency found by the Commissioner. By order of January 17, 1942, the Board approved the determination of the Commissioner and the taxpayer has appealed from the decision of the Board.

The sole question before us on this appeal is whether the taxpayer is entitled to an ordinary or to only a capital loss deduction because of his disposition of premises 1981-85 Southern Boulevard, Borough of The Bronx, in 1936. The Commissioner and the Board reached the conclusion that he suffered a capital loss, in which we concur.

He originally acquired title to the premises in 1923. In 1924 he sold them to a Mr. and Mrs. Schwartz subject to a first mortgage of $36,000, and a second mortgage of $5,500, on which he was not personally liable. On the sale he took in part payment two purchase money third mortgages aggregating $15,000. In March, 1930, he reacquired the premises from the Schwartzes without assuming liability under the first or second mortgages which had in the meantime been reduced to $32,-000 and $3,000 respectively. The third mortgages had then been reduced to $11,-000. After he reacquired the property he paid off the second mortgage and, for about five years, personally operated the property at a loss. In 1935 he executed an assignment of the rents to the Savings Bank which held the first mortgage. In the early part of 1936 he wished to abandon the property because he had lost money in trying to operate it and thought it worth less than the first mortgage. He offered it to his then attorney, Katz, for nothing, but Katz expressed an unwillingness to accept a deed because he was Blum's attorney, but said: "Well, I think I can make a fee out of it as long as you want to abandon the property. I can make a little fee for myself." This suggestion was agreeable to Blum and thereupon Katz arranged with the attorney for the bank that it should

receive a deed from the dummy who held the title for Blum in consideration for a cash payment of $250, which was paid to Katz by the bank as a fee and retained by him pursuant to his understanding with Blum.

The Board held that the transfer of the property to the mortgagee was a sale by the taxpayer. Indeed it seems to have been more clearly so than the transfers through foreclosure dealt with in Electro-Chemical Engraving Co., Inc., v. Commissioner, 311 U.S. 513, 61 S.Ct. 372, 85 L.Ed. 308, and Helvering v. Hammel, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303, 131 A.L.R. 1481. The pertinent sections of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, pages 827, 828, 873-875, are set forth in the margin.[1]

The Board made the following findings: " * * * The fact that petitioner had decided to abandon the property and was willing to alienate his interest therein without consideration did not alter the fact that the property was conveyed at petitioner's direction by his nominee for a valuable consideration paid. * * * The fact that the consideration for the conveyance was received and retained by one other than petitioner does not constitute the transfer a relinquishment of petitioner's interest in the property without consideration. Petitioner did not relinquish the property either to his attorney or to the mortgagee; he sold it to the latter and permitted his attorney to retain as a fee the proceeds of such sale."

We think there is no good answer to the Board's conclusion. To say the least, a permissible, if not an inevitable inference from the testimony before it justified the result reached. It is argued with some plausibility that before the transfer was effected the petitioner's

equity in the mortgaged property had become worthless, he had decided to abandon it and that in Commissioner v. Hoffman, 2 Cir., 117 F.2d 987, we allowed a deduction of an ordinary loss under circumstances much like the present. But there, while retaining title to premises which were under foreclosure, the taxpayer had given notice of abandonment to his mortgagee and had offered the latter a gratuitous deed. Here there was no suggestion of abandonment except to Blum's attorney but this was followed by the transfer to the mortgagee for a consideration. In Commissioner v. McCarthy, 7 Cir., 129 F.2d 84, 86, and in Commissioner v. Green, 3 Cir., 126 F.2d 70, our decision in Commissioner v. Hoffman was distinguished because in the cases on appeal to those courts there was no sufficient proof of any identifiable event showing abandonment. In the same way Commissioner v. Hoffman may be distinguished from the case before us. Commissioner v. Abramson, 2 Cir., 124 F.2d 416.

It is hard to say that Blum abandoned the property prior to the time he made the transfer. His attorney refused to accept it, the premises were still being run by the bank under its assignment of rents and the title yet remained in the taxpayer. Instead of surrendering his equity to the bank, he preferred for some reason to get $250 out of it. The $250 that he acquired was either to pay his attorney for current services in closing the deal or for future services, or for both, or to give the latter a present. In any event the consideration received belonged to Blum, irrespective of who received it, and there was no clear identifiable event to prove prior abandonment or to establish a loss, other than that realized through the sale. If we should disregard the sale as determining the loss

[1] "§ 23. Deductions from Gross Income
"In computing net income there shall be allowed as deductions:
* * * * *
"(e) Losses by Individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
"(1) if incurred in trade or business; or
"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or * * *."
"§ 117. Capital Gains and Losses
* * * * *
"(b) Definition of capital assets. For the purposes of this title, 'capital assets'

means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.
* * * * *
"(d) Limitation on capital losses. Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. * * *"

and endeavor to fix it aliunde, it could not be said that it might not have occurred in 1935 as well as in 1936, the year in which it was claimed and allowed.

We hold that there was no abandonment prior to the sale and no identifiable event which fixed the loss earlier than that date but only a gradual diminution in value resulting in a yield of $250 when the transfer was made. Thus Article 23(e)-3 of Treasury Regulations 94 did not apply, for the loss was fixed by the sale and not by abandonment, and accordingly was a capital loss deductible under Section 117 (d) of the Revenue Act of 1936, 26 U.S. C.A. Int.Rev.Acts, page 875.

Order affirmed.