EUGENE L. AND MARY R. FREELAND, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 969–78.     Filed August 5, 1980.

*Paul R. Wassenaar* and *Paul J. Dostart,* for the petitioners.
*Karen Nicholson Sommers,* for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency in the Federal income tax of petitioners for the taxable year 1975 in the amount of $4,252. After concessions, the sole issue to be decided is whether petitioners realized an ordinary or capital loss upon the voluntary conveyance of real property, encumbered by a nonrecourse purchase-money mortgage, by petitioners to their mortgagee without any monetary consideration.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference.

Petitioner Eugene L. Freeland resided in Rancho Santa Fe, Calif., and petitioner Mary R. Freeland resided in Lomas Santa Fe, Calif., at the time of the filing of the petition herein. Petitioners timely filed a joint Federal income tax return for their 1975 taxable year. Mary is a party solely by reason of filing a joint return; therefore, when we herein refer to petitioner, we will be referring solely to Eugene.

On December 31, 1968, petitioner purchased an unimproved 9-acre parcel of real property (property) located on Via de la Valle just inside the city limits of San Diego, Calif., from Lorraine W. Conley (seller) for its then fair market value of $50,000. This property was purchased with the intent to hold, and was in fact held, as an investment. Of the total price paid for the property, $9,000 was paid in cash, and the balance of $41,000 was evidenced by a note secured by a purchase-money deed of trust. Petitioner additionally incurred escrow expenses in the amount of $188 pursuant to this purchase. Petitioner made no improvement to the property while he held title to it and claimed no depreciation deductions.

Section 580b, California Code of Civil Procedure, provides in part:

No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price * * *

It is conceded that by application of section 580b, *supra,* the

note in the instant case was secured only by the property and not by the personal liability of petitioner.

The note called for semiannual principal payments of $4,100 for a period of 5 years commencing June 30, 1975, and semiannual interest payments on the unpaid principal amount (with interest accruing from the date of purchase and sale) at the rate of 7 percent. Through April 18, 1975, petitioner had made interest payments in the amount of $20,098; no amounts of principal, however, had been paid as of that date.

In the early months of 1975, petitioner was informed that the street in front of the property would have to be widened. Additionally, a moratorium was placed on sewer construction so that sewers could not be extended to the property. Moreover, there was a problem in obtaining water from the city of San Diego for the property.

To determine the impact of the above circumstances upon the value of the property, petitioner asked Charles W. Christensen & Associates (engineers) to make an engineering study of the parcel. The engineers concluded that the unfavorable developments of the required street widening, the absence of sewer and water connections, and the probable necessity for placing existing electrical wires underground would result in costs to the property owner of approximately $100,000, $55,000, and $65,000, respectively.

Petitioner is an attorney whose practice is primarily related to the real estate area. It was his opinion, after considering the report from the engineers, that the property was worth approximately $27,000 in 1975. As the unpaid balance on the note was $41,000, he considered the property to be totally worthless to him. The above-mentioned circumstances would severely limit the ability of any developer to undertake improvement or subdivision of the property. As a result of this conclusion, petitioner decided to terminate his interest in the property as expeditiously as possible.

On October 27, 1975, petitioner reconveyed the property to the seller by quitclaim deed. This deed was duly recorded and delivered to the seller. Petitioner received no monetary consideration from the seller in return for the reconveyance. Petitioner's only other alternative to rid himself of the property was to default on the note and wait for the seller to foreclose. At the time of the conveyance, there had been no foreclosure action instituted by the seller, nor was there any threat thereof.

On their 1975 Federal income tax return, petitioners claimed the amount of $8,855 as an ordinary loss under section 165(a) and (c)(2), I.R.C. 1954,[1] as a result of the reconveyance of the property. By amended petition, petitioners claim the proper amount of the loss to be $9,188. Respondent agrees that $9,188 is the proper amount of the loss, but claims that the loss is capital rather than ordinary, the treatment thereof governed by sections 165(f), 1211, and 1212.

## OPINION

Petitioner purchased real estate in California in 1968 for $50,000, paying the vendor $9,000 cash and giving a purchase-money deed of trust (hereinafter mortgage) for the balance of $41,000. By 1975, when the balance due on the purchase price was still $41,000, certain conditions existed which reduced the fair market value of the property to $27,000. Since under California law petitioner was not personally liable on the note secured by the purchase-money mortgage, petitioner decided to terminate his interest in the property, which he accomplished by reconveying the property to the vendor-mortgagee by quitclaim deed dated October 27, 1975, for no monetary consideration. Petitioner claims an ordinary loss in the amount of $9,188[2] for 1975 as a result of the transaction. The amount of the loss is not in dispute, but respondent determined that the loss is deductible only as a loss on the sale or exchange of a capital asset subject to the limitations provided in sections 1211[3] and 1212.[4]

---

[1]All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated.

[2]The amount of the loss was arrived at by including in petitioner's basis the cash he paid plus the face amount of the purchase-money mortgage (and the escrow fee) and subtracting therefrom the unpaid balance due on the mortgage, thus including in the "amount realized" the full unpaid balance due on the nonrecourse obligation.

[3]Sec. 1211 provides in pertinent part:

(b) OTHER TAXPAYERS.—

(1) IN GENERAL.—In the case of a taxpayer other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus (if such losses exceed such gains) whichever of the following is smallest:

(A) the taxable income for the taxable year,

(B) $1,000, or

(C) the sum of—

(i) the excess of the net short-term capital loss over the net long-term capital gain, and

(ii) one-half of the excess of the net long-term capital loss over the net short-term capital gain.

[4]Sec. 1212 provides in pertinent part:

(b) OTHER TAXPAYERS.—

Section 165(a) and (c)(2) allows a deduction from ordinary income for losses incurred in transactions entered into for profit. The above sections, however, are limited by section 165(f) which provides that losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212. That petitioner's interest in the mortgage property was a capital asset is not in dispute. The issue is whether petitioner's transfer of the property to the mortgagee was a "sale or exchange" within the meaning of those sections.

The parties have framed the issue in terms of abandonment, both parties implicitly agreeing that a loss sustained on abandonment is an ordinary one. Petitioner states that the issue to be decided is whether a disposition by abandonment constitutes a sale or exchange. Respondent concedes that an abandonment of property is not a disposition by sale or exchange, but argues that this disposition was the equivalent of a foreclosure sale rather than an abandonment.

It appears that by reconveying the property to the seller, petitioner accomplished an abandonment under California law. See *Gerhard v. Stephens*, 442 P.2d 692, 69 Cal. Rept. 612 (1968), wherein it was held that, as a general rule, for there to be an abandonment, there must be an intent to abandon and one decisive and conclusive act to clearly indicate this intent, which the reconveyance accomplished here. But see *Commissioner v. Hoffman*, 117 F.2d 987 (2d Cir. 1941). But regardless of whether petitioner's intent and overt act of reconveyance qualified the reconveyance as an abandonment under California law, we are concerned here with whether the voluntary reconveyance, per se, constituted a sale or exchange within the meaning of section 1211(b)(1) of the Internal Revenue Code. See *Helvering v. Jones*, 120 F.2d 828 (8th Cir. 1941).

That a disposition, causing gain or loss to be recognized under section 1001, occurs upon a reconveyance of property in satisfaction of a mortgage obligation is well settled. E.g., *Parker v.*

---

(1) In GENERAL.—If a taxpayer other than a corporation has a net capital loss for any taxable year—

(A) the excess of the net short-term capital loss over the net long-term capital gain for such year shall be a short-term capital loss in the succeeding taxable year, and

(B) the excess of the net long-term capital loss over the net short-term capital gain for such year shall be a long-term capital loss in the succeeding taxable year.

*Delaney,* 186 F.2d 455 (1st Cir. 1950); however, not every taxable disposition of property is a sale or exchange. *Fox v. Commissioner,* 61 T.C. 704 (1974); *Smith v. Commissioner,* 66 T.C. 622 (1976), revd. sub nom. *Schleppy v. Commissioner,* 601 F.2d 196 (5th Cir. 1979).

The question whether a reconveyance of property to a seller-mortgagee by various means and under various circumstances constitutes a sale or exchange for Federal tax purposes has been before the courts in numerous cases over an extended period of time, with the conclusions being at times inconsistent and confusing. Factors that have been given consideration include (1) whether the transfer was voluntary or involuntary, (2) whether the mortgage debt was released or not, and whether the transferor received any additional (even minimal) consideration or boot, (3) whether the transferor-mortgagor was personally liable on the mortgage debt, (4) whether the transferor-mortgagor received any tax benefits from including the mortgage debt in his basis while he held the property, and (5) whether the fair market value of the property at the time of the reconveyance exceeded or was less than the unpaid balance due on the mortgage debt. It was felt that the decisions of the Supreme Court in *Helvering v. Hammel,* 311 U.S. 504 (1941), *Helvering v. Nebraska Bridge Supply & Lumber Co.,* 312 U.S. 666 (1941), and *Crane v. Commissioner,* 331 U.S. 1 (1947), might clear up the confusion, but, unfortunately, such has not been the case. Compare, e.g., *Stokes v. Commissioner,* 124 F.2d 335 (3d Cir. 1941), and *Jamison v. Commissioner,* 8 T.C. 173 (1947), with *Commissioner v. Abramson,* 124 F.2d 416 (2d Cir. 1942), all decided after *Hammel* but before *Crane;* and *Fox v. Commissioner, supra,* with *Millar v. Commissioner,* 67 T.C. 656 (1977), affd. 577 F.2d 212 (3d Cir. 1978), *Russo v. Commissioner,* 68 T.C. 135 (1977), and *Estate of Delman v. Commissioner,* 73 T.C. 15, 28 (1979), all decided after *Crane.* We have therefore reviewed and reanalyzed the opinions in *Hammel, Nebraska Bridge,* and *Crane,* and other cases decided subsequent thereto, to find the answer to the issue before us.

It has been well established that where a taxpayer transfers property to his mortgagee in settlement of a mortgage obligation for which he is personally liable, any loss sustained by him will be deemed to have resulted from a sale or exchange on the ground that the taxpayer received consideration in return for

transferring this property, the consideration being his release from liability. *Stamler v. Commissioner*, 145 F.2d 37 (3d Cir. 1944); *Kaufman v. Commissioner*, 119 F.2d 901 (9th Cir. 1941); *Peninsula Properties Co., Ltd. v. Commissioner*, 47 B.T.A. 84 (1942).

However, until the Supreme Court's decision in *Helvering v. Hammel, supra,* there was considerable doubt as to whether a loss sustained by the mortgagor of property resulting from a foreclosure sale by the mortgagee was a capital loss or an ordinary one. Compare *Commissioner v. Hammel*, 108 F.2d 753 (6th Cir. 1940), with *Electro-Chemical E. Co. v. Commissioner*, 110 F.2d 614 (2d Cir. 1940). In *Helvering v. Hammel, supra,* the Supreme Court concluded that a foreclosure sale (or involuntary sale) constituted a sale or exchange resulting in a capital loss, the rationale being that there was no intent on the part of Congress to differentiate between a forced sale and a voluntary one. In that case, there was an actual sale, albeit involuntary, and a deficiency judgment was taken against the debtor. However, in the course of its opinion, the Court reviewed the legislative history of the capital gains and losses provisions and noted that in 1934 Congress amended those provisions to close a loophole which permitted a taxpayer to sell property within 2 years and take an ordinary loss (because it was not a capital asset unless held 2 years) or hold onto it for 2 years and then sell it for a capital gain, if a gain was realized. It also noted that Congress enlarged the scope of the provisions relating to losses from sale of capital assets by including therein losses upon dispositions of property by methods other than sale and without reference to the voluntary actions of the taxpayer (such as losses on redemptions, etc.). The Court concluded that Congress intended a broad meaning for the words "sales or exchanges" as used in the capital gain and loss provisions, and clearly, Congress did not intend to permit deduction in full of losses resulting from forced sales of capital assets while taxing only a fraction of the gains resulting from the sales of similar assets.

Shortly after the *Hammel* case, the Supreme Court decided *Helvering v. Nebraska Bridge & Lumber Co., supra.* In that case, the taxpayer's land was bid in by the State at a tax sale, and taxpayer decided not to redeem it because his plans for use of the land had not materialized. Both the Board of Tax Appeals and the Eighth Circuit Court of Appeals had held that the

forfeiture was not a sale within the meaning of the capital gains and loss provisions. The Court of Appeals said that in enacting then section 117(d), Revenue Act of 1934 (the predecessor of sec. 1211(a)), Congress was dealing with losses from transfers of property where the transferor received some equivalent for the property parted with; however, in the case before it, the transfer of title to the State was not only involuntary but was without any consideration moving to the transferor, and no debt of his was either paid or reduced. Hence, the proceeding merely resulted in the extinguishment of the owner's title and was not a sale. The Supreme Court reversed per curiam on the authority of *Hammel*, suggesting that a transaction could be both involuntary and without consideration passing to the transferor and still be a sale within the capital gain and loss provisions.

*Hammel* has also been relied on as authority for the proposition that a foreclosure sale constitutes a sale regardless of whether the taxpayer is personally liable for the mortgage indebtedness. *Helvering v. Nebraska Bridge Supply & Lumber Co., supra; Commissioner v. Abramson, supra; Russo v. Commissioner, supra.*

Despite the Supreme Court decisions in the above two cases, this Court held in *Jamison v. Commissioner, supra,* that a voluntary deed of property to the State to avoid payment of taxes was an abandonment rather than a sale, the rationale being that since there was no personal liability on the part of the owner for the taxes, the owner received no consideration and hence there was no sale. The Court relied on *Stokes v. Commissioner, supra,* and *Lapsley v. Commissioner,* 44 B.T.A. 1105 (1941), which had held that where a mortgagor with no personal liability on the mortgage debt voluntarily deeded the mortgaged property on the mortgagee for no consideration, there was no sale.[5]

In late 1947, the Supreme Court decided *Crane v. Commissioner, supra.* In that case, the taxpayer had inherited property subject to a mortgage which was equal to the value of the

---

[5]In the earlier cases decided by the Board of Tax Appeals, such as *Commonwealth, Inc. v. Commissioner,* 36 B.T.A. 850 (1937), and *Baird v. Commissioner,* 42 B.T.A. 970 (1940), since the mortgagor was not personally liable on the debt, the Board considered the reconveyance to be only of the taxpayer's equity in the property, and, finding no consideration for the transfer of the equity, it concluded there was no sale. But see *Crane v. Commissioner,* 331 U.S. 1 (1947), above.

property and had no personal liability on the mortgage debt. When the mortgagee was threatening foreclosure, the taxpayer sold the property to a third party, subject to the mortgage, for $2,500 cash. There was no question that there had been a sale; the first question was whether taxpayer had sold only her equity in the property or the property itself, and, if the latter, whether the "amount realized" on the sale included the full unpaid amount of the mortgage. The latter became important because taxpayer had been allowed depreciation deductions on the property while she held it, and if the "amount realized" included the face value of the mortgage, that exceeded taxpayer's basis by a considerable amount, and taxpayer realized a sizable gain. The Court held that the sale was of the property itself and not just taxpayer's equity therein, and that the "amount realized" included the face amount of the mortgage. While it appears that the Court was primarily interested in avoiding a situation which would permit the owner to include the amount of the mortgage in her basis for depreciation and then not offset the tax benefit derived therefrom by not including the mortgage debt in the amount realized for computing gain, nevertheless the case stands for the proposition that upon the sale or disposition of mortgaged property the amount of the mortgage must be included in the "amount realized" for computing gain or loss.

We do not overlook note 37 to the *Crane* opinion wherein it is said:

Obviously, if the value of the property is less than the amount of the mortgage, a mortgagor who is not personally liable cannot realize a benefit equal to the mortgage. Consequently a different problem might be encountered where a mortgagor abandoned the property or transferred it subject to the mortgage without receiving boot. That is not this case.[6]

While the above-quoted note 37 to the *Crane* opinion was clearly dictum, it has created further uncertainty in this area. Petitioner relies on it, in this case, pointing out that he had no personal obligation on the note, that the fair market value of the property at the time of the reconveyance was less than the unpaid balance on the note, and that he received no boot on the

---

[6]Since *Crane v. Commissioner*, 331 U.S. 1 (1947), was not concerned with whether there had been a sale but only with the "amount realized" on a sale, the problem referred to in n. 37 would relate only to the "amount realized" under the circumstances recited and would not be relevant to whether there was a sale or exchange.

reconveyance. However, in *Tufts v. Commissioner*, 70 T.C. 756 (1978), on appeal (5th Cir., Apr. 23, 1979), the taxpayers also relied on note 37 of *Crane* to claim that a nonrecourse liability was includable in the "amount realized" on the sale of partnership interests only to the extent of the fair market value of the mortgaged property which was less than the unpaid amount of the mortgage. This Court rejected the argument on the authority of *Millar v. Commissioner, supra,* and *Woodsam v. Commissioner*, 16 T.C. 649 (1951), saying that the footnote in *Crane* was not intended to limit the amount of the liability taken into the "amount realized" to the fair market value of the property, because to do so would be inconsistent with the main thrust of the opinion in *Crane*. The Court concluded that it is well settled that when there is a sale or exchange of property subject to a liability, the amount realized includes the full amount of the liability, even though the liability exceeds the value of the property. In *Millar*, the taxpayers apparently surrendered certain stock they had pledged as security for loans, and the Court held they had realized a gain to the extent that the face amount of the notes exceeded their adjusted bases in the stock and that the value of the stock was immaterial. See also *Estate of Delman v. Commissioner, supra.*

Many of the cases relied on by petitioner, such as *Stokes*, *Lapsley*, and *Jamison*, all *supra*, were decided before *Crane*, and *Fox v. Commissioner, supra*,[7] relied to some extent on those cases. As this Court noted in note 9 to its opinion in *Fred H. Lenway & Co. v. Commissioner*, 69 T.C. 620, 628 (1978), affd. 620 F.2d 310 (9th Cir. 1980), referring to the first three cases above:

> It is arguable whether these cases continue to have their original vitality in light of the subsequent decision of the Supreme Court in *Crane v. Commissioner*, 331 U.S. 1 (1947). See *Millar v. Commissioner*, 67 T.C. 656, 660–661 (1977). Cf. *Russo v. Commissioner*, 68 T.C. 135 (1977). But see *Fox v. Commissioner*, 61 T.C. 704, 715 n. 7 (1974), a case which involved an unusual set of circumstances.

Here, of course, we are concerned with whether there was a

---

[7] In *Fox v. Commissioner*, 61 T.C. 704 (1974), a case involving an unusual set of facts (an embezzler who was caught and voluntarily transferred stock acquired with the embezzled funds to his victims), the Court said: "We think petitioner should be treated no differently than a mortgagor who voluntarily conveys or abandons the secured property to the mortgagee. Under such circumstances no sale or exchange ordinarily occurs." (61 T.C. at 715).

sale. Although indirectly related to that issue, *Crane* and the cases that followed it were primarily related to how much gain or loss was realized. We will first direct our attention to the issue here involved.

*Hammel* clearly establishes that Congress intended the words "sale or exchange" to have a broad meaning, not to be limited to the standard transfer of property by one person to another in exchange for a stated consideration in money or money's worth. Here, there was a voluntary transfer of the property by petitioner to the mortgagee which event fixed the amount of petitioner's loss. Had petitioner held on to the property until the mortgagee foreclosed, there would undoubtedly have been a sale under *Hammel*. We see no reason why an involuntary transfer should qualify as a sale anymore than should a voluntary reconveyance to the mortgagee in lieu of foreclosure. And for the same reasons stated in *Hammel*, we do not believe Congress intended to permit a taxpayer to take an ordinary loss by voluntarily reconveying the property to the mortgagee and to take a possible capital gain by forcing the mortgagee to foreclose. The reconveyance to the mortgagee effectively terminated petitioner's interest in the property, but the mortgagee received property having a value—it was not simply an extinguishment of petitioner's title, it was a transfer of that title to the mortgagee. We do not know whether the mortgage debt was canceled—it simply became uncollectible.

Nor do we believe Congress intended that the character of the transaction be determined by whether the transferor received boot, even though minimal. See *Blum v. Commissioner*, 133 F.2d 447 (2d Cir. 1943). According to petitioner's argument, he could have converted what he claims to be an ordinary loss into a capital loss by accepting $5 boot from the mortgagee. In short, we believe that under the rationale of *Hammel*, a reconveyance by the mortgagor to the mortgagee constitutes a sale even though the mortgagor had no personal liability on the debt. As noted below, the rationale of *Crane* supplies the consideration.

It has been held that where there is a sale, consideration is not necessary. As heretofore noted, this would appear to be the conclusion reached by the Supreme Court in *Helvering v. Nebraska Bridge Supply & Lumber Co., supra,* and is clearly stated by this Court in *Russo v. Commissioner, supra* at 152, wherein we said "for purposes of a 'sale' under 1211, it is

irrelevant whether the 'seller' receives consideration. Such conclusion appears to follow from the *Hammel* decision, but subsequent cases have explicity so held," citing *Commissioner v. Peterman*, 118 F.2d 973 (9th Cir. 1941); *Helvering v. Nebraska Bridge Supply & Lumber Co., supra; Abramson v. Commissioner, supra; Welch v. Street*, 116 F.2d 953 (1st Cir. 1941).

Nevertheless, in the older cases dealing with whether a transaction was a sale for capital gain and loss purposes, so much emphasis was put on whether the transferor and/or the transferee received a benefit, or consideration, that we will address the question here. Under *Hammel*, a foreclosure sale is considered to be a sale for purposes of sections 1211 and 1212, and under *Crane*, the full amount of the indebtedness is includable in the amount realized. *Tufts* and the other cases cited hold that the amount realized is not limited to the fair market value of the security property even though there is no personal liability on the note. We do not understand why there should be any difference between a foreclosure sale of the security property or a voluntary reconveyance of the property to the mortgagee. In either event, the mortgagor's interest in the property is terminated and title is transferred to someone else, and the mortgagor receives nothing out of the transaction. In both instances, the mortgagor is relieved of property which has a lien on it and is also relieved of the obligation to pay taxes and assessments against the property. There is no *forgiveness* of indebtedness in either case, although there is a change in the mortgagor's balance sheet or net worth. He no longer has the liability to account for, nor does he have the assets. See dissenting opinion in *Fred H. Lenway & Co. v. Commissioner, supra*. We believe the holdings of *Crane* and subsequent cases decided in the light of *Crane* mandate the conclusion that *relief* from indebtedness, even though there is no personal liability, is sufficient to support a sale or exchange. See *Simon v. Commissioner*, 32 T.C. 935 (1959), affd. 285 F.2d 422 (3d Cir. 1960); *Johnson v. Commissioner*, 59 T.C. 791 (1973), affd. 495 F.2d 1079 (6th Cir. 1974), cert. denied 419 U.S. 1040 (1974); *First National Industries, Inc. v. Commissioner*, 404 F.2d 1182 (6th Cir. 1968), cert. denied 394 U.S. 1014 (1969).

Furthermore, if the full amount of the indebtedness is included in computing gain or loss on the transaction, we see no reason why its elimination should not also support a sale. And as

heretofore noted, even if the amount realized was limited to the fair market value of the property, that would involve only the amount of the gain or loss, not whether there was consideration to support a sale, if such is necessary. The fact that the property is worth less than the face amount of the debt may be a reason for reconveying the property to the mortgagee, but it should not change the character of the transaction. Nor should the fact that petitioner realized no tax benefits in the form of depreciation deductions while he held the property determine the characterization. The transaction is a capital transaction involving a capital asset and should be, and we think was intended to be, governed by the capital gain and loss provisions.

Because of our conclusion herein, we will no longer adhere to our opinions in *Jamison v. Commissioner, supra, Lapsley v. Commissioner, supra, Baird v. Commissioner,* 42 B.T.A. 970 (1940), motion to vacate denied 43 B.T.A. 415 (1941), and *Commonwealth, Inc. v. Commissioner,* 36 B.T.A. 850 (1937), to the extent they are inconsistent with our views expressed herein. Petitioner urges that we observe the doctrine of stare decisis to reach the opposite conclusion. That doctrine embodies an important social policy representing an element of continuity in law and is rooted in the psychological need to satisfy reasonable expectations. *Helvering v. Hallock,* 309 U.S. 106, 119 (1940). But there has been sufficient change in the judicial thinking on this subject, as evidenced by the cases decided since 1941, to cast considerable doubt on the validity of those decisions, and it would be wrong for us to ignore the more recent approaches to this issue simply to adhere to that doctrine. As noted in the footnote to the *Lenway* case, the vitality of those cases has been sapped before this, and the handwriting has been on the wall long before today.[8]

In conclusion, we hold that petitioner's voluntary reconveyance of the property to the mortgagee for no monetary consideration (boot) was a sale within the meaning of sections 1211 and 1212 of the Code, even though petitioner had no personal obligation on the mortgage debt, the fair market value of the property at the time of the reconveyance was less than the

---

[8]See M. Ginsburg, "The Leaky Tax Shelter," 53 Taxes 719, 733 (1975); and R. Handler, "Tax Consequences of Mortgage Foreclosures and Transfers of Real Property to the Mortgagee," 31 Tax L. Rev. 193, 244 (1976).

unpaid balance due on the mortgage debt, and petitioner had received no tax benefits in the form of depreciation deductions with respect to the property while he held it. Consequently, petitioner's loss was a capital loss subject to the limitations of section 1211(b).

*Decision will be entered for the respondent.*

Reviewed by the Court.