JAMES W. YARBRO AND MARY E. YARBRO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Yarbro v. Commissioner
Docket No. 8096-79.
United States Tax Court
T.C. Memo 1982-675; 1982 Tax Ct. Memo LEXIS 74; 45 T.C.M. (CCH) 170; T.C.M. (RIA) 82675; November 22, 1982. Roger Norman, for the petitioner. Rebecca W. Wolfe, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge James M. Gussis pursuant to section 7456(c), Internal Revenue Code of 1954[1], and Rules 180 and 181 of the Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *76 OPINION OF THE SPECIAL TRIAL JUDGE GUSSIS, Special Trial Judge: Respondent determined a deficiency in petitioners' Federal income taxes for 1976 in the amount of $2,888.89. The issue is whether petitioners realized an ordinary or capital loss when a joint venture in which petitioner James Yarbro was a participant abandoned real property encumbered by a nonrecourse mortgage. FINDINGS OF FACT The facts have been substantially stipulated and they are found accordingly. Petitioners filed a joint income tax return for 1976. Petitioners were residents of Fort Worth, Texas at the time the petition in this case was filed. Since Mary Yarbro is a petitioner herein only by virtue of having filed a joint return for 1976, James Yarbro will hereinafter be referred to as petitioner. Petitioner is a certified public accountant and real estate broker. He was an Internal Revenue Agent for several years and then worked for four oil companies as a tax manager and financial vice president. In 1969 petitioner opened his own office as a financial consultant. The joint venture herein involved was the third real estate joint venture petitioner organized and was known as Yarbro 72-3 Joint *77 Venture (hereinafter referred to as the joint venture). The joint venture was formed in 1972 to acquire approximately 132 acres of undeveloped land in Tarrant County, Texas. Title to the property was held in the name of J. W. Yarbro, trustee. As part of the purchase price the petitioner, as trustee, executed nonrecourse promissory notes secured by deeds of trust. Pursuant to section 761(a), all participants in the joint venture agreed to elect to be excluded from the partnership provisions of the Internal Revenue Code as an unincorporated organization availed of for investment purposes only and not for the active conduct of trade or business. A statement to the effect was filed with respondent by petitioner, acting as trustee. Petitioner retained a 10% interest in the joint venture. The other investors included one 50% participant and four 10% participants. About six months after the joint venture was organized petitioner acquired an additional 10% interest when one of the participants decided to dispose of his interest in the joint venture. Petitioner received a fee of $4,000 for his services as trustee and manager of the joint venture property. The joint venture agreement *78 also provided that petitioner was to receive a commission of 3% if the property were sold. The land was rented for $974 per year for several years and then was increased to about $1,000 per year. Interest payments alone amounted to approximately $22,000 per year. There were additional obligations for property taxes and insurance.Each participant was required to make a pro rata contribution each year to pay expenses in excess of income. By November 1976 the fair market value of the property was less than the amount of the nonrecourse mortgage and the City of Fort Worth had proposed a substantial property tax increase. Consequently, the joint venture participants decided not to make the annual interest payment due in November and to abandon the property. Petitioner, as trustee, notified the trustee of the mortgagees that he would not thereafter assert any claim of ownership or attempt to exercise any incident of ownership to the property. The trustee for the mortgagees requested that petitioner, as trustee, voluntarily reconvey the property, but petitioner refused. In June 1977 the mortgagees obtained title to the property pursuant to foreclosure proceedings. The joint venture *79 participants received no consideration from the foreclosure. On his 1976 Federal income tax return petitioner claimed the amount of $10,376 as an ordinary loss under section 165 from the abandonment of the joint venture property. OPINION Respondent contends that the loss incurred upon abandonment of the property in 1976 is a long-term capital loss from the sale or exchange of a capital assets subject to the limitations provided in sections 1211 and 1212. To support his claim for an ordinary loss, the petitioner claims the property was not a capital asset because it was either property used in a trade or business or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business and that the phrase "sale or exchange" does not include an abandonment. We agree with respondent. Sections 165(a), (c)(1), and (c)(2) allow a deduction for losses incurred in a trade or business and losses incurred in any transaction entered into for profit. These sections are limited by section 165(f) which provides that losses from sales or exchanges of capital *80 assets shall be allowed only to the extent permitted in sections 1211 and 1212. Section 1221 defines a capital asset as property held by the taxpayer, but does not include, interalia, real property used in the taxpayer's trade or business or property held by the taxpayer primarily for sale to customers in the ordinary course of the taxpayer's trade or business. Petitioner argues that the property (1) was acquired in the ordinary course of his financial consulting and property management business, (2) was used in his trade or business of renting property, or (3) was purchased with the intent to subdivide and develop the property. The record does not support petitioner's argument that his interest in the joint venture was used in his consulting and property management business. Whether the property was so used is a question of fact. We think petitioner acquired his interest primarily for investment purposes. The nexus between his consulting and property management business and his retention of a joint venture interest is simply to tenuous and conjectural. Petitioner also contends *81 that he was in the trade or business of renting the property. We disagree. We are not persuaded that the casual rental of the undeveloped tract for a nominal annual rental converts the tract into property used in a trade or business within the meaning of the statute. Cf. Johnson v. Commissioner,19 T.C. 93 (1952).
Petitioner also asserts that the property was held primarily for sale to customers in the ordinary course of his trade or business of subdividing property. Petitioner testified that he purchased the joint venture property with the intent to subdivide the land. However, no steps were taken to implement such plan. Moreover, even if such an inchoate intent did in fact exist at one time, it fairly appears on this record that such intent no longer existed in the period in issue. This Court has held that generally it is the purpose for which the property is held at the time of its disposition that determines tax treatment. Daugherty v. Commissioner,78 T.C. 623, 629 (1982); Biedermann v. Commissioner,68 T.C. 1, 11 (1977); *82 Eline Realty Company v. Commissioner,35 T.C. 1, 5 (1960). Accordingly, on this record we conclude that the property was not held primarily for sale to customers in the ordinary course of business. Respondent contends that the abandonment of the undeveloped property by the joint venture participants in 1976 constituted a "sale or exchange" within the meaning of sections 1211 and 1222. In Middleton v. Commissioner,77 T.C. 310 (1981), on appeal (11th Cir. 2/16/82), this Court concluded that the abandonment of undeveloped acreage (which was subject to nonrecourse mortgage liabilities exceeding the fair market value of the acreage) constituted a sale or exchange and hence resulted in capital losses subject to the limitations of section 1211 and 1212. See also Freeland v. Commissioner,74 T.C. 970 (1980). We believe the Middleton case is indistinguishable from the factual situtation here present and consequently we reach the same conclusion here. [3] We therefore hold that as a result of the abandonment of the undeveloped tract in 1976 petitioner incurred a capital loss subject to the limitations of sections 1211 and 1212. *83 Petitioner also makes certain arguments invoking equitable considerations. This Court does not under the circumstances herein have the jurisdiction to grant such equitable claims. Estate of Rosenberg v. Commissioner,73 T.C. 1014, 1017 - 1018 (1980). "The Internal Revenue Code, not general equitable principles, is the mainspring of… [our] jurisdiction." Commissioner v. Gooch Milling and Elevator Co.,320 U.S. 418, 422 (1943). Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. The Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable in these particular circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule.
3. Petitioner's efforts on brief to distinguish the Middleton case are unpersuasive. We do not believe that the recent case of Tufts v. Commissioner,651 F.2d 1058 (5th Cir. 1981), reversing 70 T.C. 756 (1978) certiorari granted May 3, 1982, undermines our holding in the Middleton case. The parties agree that the amount of the loss is $10,376 as claimed on petitioners' 1976 income tax return. The Tufts↩ case, which involved the measure of the loss and not the character thereof, did not involve the issue present here, and we perceive nothing in the Court's opinion which would be applicable here.