CLARENCE WILLIAMS and SAMARIA WILLIAMS, Petitioners v COMMISSIONER OF INTERNAL REVENUE, Respondent
Williams v. Commissioner
Docket No. 17159-81
United States Tax Court
T.C. Memo 1990-266; 1990 Tax Ct. Memo LEXIS 285; 59 T.C.M. (CCH) 731; T.C.M. (RIA) 90266; May 30, 1990, Filed *285 Decision will be entered under Rule 155. Brenda R. Williams, for the petitioners. Elias T. Majoros, for the respondent. PARKER, Judge. PARKER
*996 MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' Federal income tax for the taxable year 1977 in the amount of $ 16,817.86 and an addition to tax under section 6651(a) in the amount of $ 4,204.47. Subsequently, by amendment to his answer, respondent increased the deficiency to $ 246,653 (an increase of $ 229,835.14) and increased the late filing addition to $ 61,663 (an increase of $ 57,458.53). This increased deficiency was attributable to petitioner Clarence Williams' interest in a limited partnership named Kirkwood Limited Dividend Housing Association. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the year involved in this case, and all rule references are to the Tax Court Rules of Practice and Procedure. The issues to be decided are: (1) Whether petitioners have substantiated interest expenses in the amount of $ 30,420 or in any lesser amount; (2) Whether petitioners have established that they sustained a net operating loss *286 in the amount of $ 16,854 or in any lesser amount that is deductible by them in 1977; (3) Whether respondent has established that petitioner Clarence Williams realized taxable gain when his limited partnership defaulted on its mortgage and the U.S. Department of Housing and Urban Development (HUD) foreclosed the mortgage and repossessed the property, and (4) Whether petitioners are liable for an addition to tax under section 6651(a)(1) for failure to file their 1977 tax return within the time prescribed by law. *997 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of facts and the exhibits attached thereto are incorported herein by this reference. Petitioners Clarence Williams and Samaria Williams are husband and wife, and at the time they filed their petition in this case they lived in Flint, Michigan. Petitioners filed their U.S. Individual Income Tax Return (Form 1040) for the taxable year 1977 with the District Director in Flint, Michigan on January 16, 1979. Petitioners had not sought or obtained any extension of time for the filing of their 1977 return. Petitioners calculated and reported their income on a calendar year basis and used *287 a cash method of accounting. During the year 1977 petitioner Clarence Williams was a practicing physician and petitioner Samaria Williams was an office manager. On Schedule A of their 1977 return petitioners deducted interest expense in the amount of $ 30,420, including home mortgage interest and interest payments to at least six different banks. At the beginning of the trial, respondent conceded that petitioners had adequately substantiated interest expense deductions in the amount of $ 7,404.46. [1] There is no competent or persuasive evidence in the record to support the remaining claimed interest expense deductions. [2] *288 *289 On their 1977 tax return, on line 20 of Form 1040, petitioners deducted $ 16,854 which they described as "OPERATING LOSS - 1976." There is no evidence in the record other than the figures on their tax returns to support this alleged loss. Largely because of a large loss deduction claimed in connection with Kirkwood Limited Dividend Housing Association, petitioners' salary or wage income of $ 100,000 was offset and petitioners reflected a negative adjusted gross income of $ 4,037 on their 1975 tax return. That negative figure together with itemized deductions (excluding itemized deductions in excess of nonbusiness interest income) on their 1975 Schedule A produced a net operating loss in the amount of ($ 20,472). *290 On their 1976 return petitioners deducted the 1975 loss of $ 20,472 and the loss in regard to Kirkwood Limited Dividend Housing Association and again offset these losses against wage income of $ 100,000 to come up with a negative adjusted gross income figure of $ 14,975. This negative figure together with claimed itemized deductions of $ 33,239 and personal and dependency exemptions of $ 4,500 produced a claimed negative taxable income of $ 52,714. However because of tax preference items, namely accelerated depreciation on low-income rental housing under section 167(k) in the amount of $ 121,999, petitioners computed and paid a minimum tax of $ 16,590 for 1976. On Form 4625, Computation of Minimum Tax, reference is made to the 1975 loss figure of $ 20,472 as follows: "1975 10% X 20,472 - not included No effect on taxable income." On their return for 1977, the year involved in this case, petitioners deducted a loss of $ 16,854, described on the return as "Operating Loss - 1976". This $ 16,854 loss figure appears to be the 1976 negative taxable income of $ 52,714, less the $ 4,500 exemptions, less the excess of Schedule A itemized deductions over nonbusiness income ($ 10,888), less *291 the 1975 loss ($ 20,472). The method of calculating the 1976 net operating loss figure appears to correctly apply the modifications mandated by section 172(d). [3]
*998 There is no competent or persuasive evidence in the record to show that petitioners in fact sustained a loss in 1976 or in any other year, or that any loss, if sustained in 1976 or in any other year, was properly deductible by them in 1977. As noted above, the only information in the record in regard to any net operating loss comes from the figures on the various *292 tax returns. Petitioners' 1977 tax return contained no reference to the Kirkwood Limited Dividend Housing Association. On December 27, 1972, a limited partnership was formed by Marcus G. Woodson under Michigan law to do business under the name of Kirkwood Limited Dividend Housing Association (hereinafter referred to as "Kirkwood Limited"). Marcus G. Woodson (hereinafter referred to as "Woodson") was the general partner. On December 28, 1972, Woodson as the general partner executed a nonrecourse Mortgage and Mortgage Note evidencing a debt of $ 681,900 to Citizens Mortgage Corporation, secured by certain real property in Detroit, Michigan, located at 1400-1412 Seward and 1635 Calvert. Also on December 28, 1972, Kirkwood Limited and Citizens Mortgage Corporation entered into a Building Loan Agreement. That same day Kirkwood Limited also entered into an agreement with the Secretary of the U.S. Department of Housing and Urban Development (hereinafter referred to as "HUD"), a Regulatory Agreement For Limited Distribution Mortgagors under Section 236 of the National Housing Act, As Amended, for Project No. 044-44330-LD-EC. Kirkwood Limited was to rehabilitate certain housing at the *293 locations indicated above for low income housing, and HUD made a commitment to finance the project. On December 29, 1972, the Certificate of Limited Partnership of Kirkwood Limited was amended to include petitioner Clarence Williams as a limited partner. In fact, petitioner Clarence Williams was the sole limited partner, holding 10 limited partnership units. That amendment to the Certificate of Limited Partnership also provided that net profits and losses and available cash flow were apportioned 5 percent to the general partner and 95 percent to the limited partner, i.e., to petitioner Clarence Williams. On April 1, 1974, Kirkwood Limited and Citizens Mortgage Corporation executed a nonrecourse Supplemental Mortgage and Mortgage Note for an additional $ 43,100, which was contemporaneously consolidated with the original $ 681,900 mortgage. On April 5, 1974, the mortgages and the Consolidation and Modification Agreement between Kirkwood Limited and Citizens Mortgage Corporation were assigned to the Federal National Mortgage Association in Washington, D.C. as mortgagee. The closing on the project occurred on April 23, 1974, and on October 18, 1974, the Federal National Mortgage Association *294 assigned the mortgages and the Consolidation and Modification Agreement to the Secretary of HUD as the mortgagee. The total mortgage at that point was in the amount of $ 725,000. On April 16, 1976, Woodson as the general partner of Kirkwood Limited and petitioner Clarence Williams as the limited partner entered into a second amended agreement changing the Certificate of Limited Partnership to grant the limited partner a 95 percent interest in capital and in profits and losses of Kirkwood Limited. Petitioner Clarence Williams was shown as holding 10 partnership units and a capital account of $ 136,000. The preamble to that second amended agreement refers to resolving "the existing differences between the General Partners and the Limited Partner including a rescission by the General Partners of the purported forfeiture of the Limited Partner's interest under a letter dated March 25, 1976." However, the record in this case is silent as to the nature of that dispute. Petitioner Clarence Williams was present throughout the trial of this case, but did not testify on any issues in regard to Kirkwood Limited. Under the second amended agreement, Kirkwood Limited continued in the business *295 of providing housing to persons of low and moderate incomes, renting out the now rehabilitated housing units. In regard to capital contributions, that agreement provided that the general partners contributed "their entire interest in HUD Commitment 044-44330-LD-EC." The limited partnership interest consisted of 10 units, all held by petitioner Clarence Williams. The second amended agreement provided, in regard to the limited partner's capital contribution, that: Each Limited Partner shall contribute to the capital of the Partnership and have credited to his capital account the sum set forth opposite his name on Exhibit B, attached hereto, and shall receive appropriate credit to his capital account therefor. Each Limited Partner shall receive one Limited Partnership Unit for each $ 13,600 so contributed. The second amended agreement further provided that the total capital contributions of the limited partners shall be $ 136,000, the amount *999 shown as petitioner Clarence Williams' capital contribution. That second amended agreement also provided that the $ 136,000 capital contribution by the limited partner could be paid in cash or paid $ 6,000 in cash and the balance by a nonnegotiable *296 promissory note. The record in this case does not show in what combination of cash and/or notes petitioner Clarence Williams contributed the $ 136,000 to Kirkwood Limited. The purpose of Kirkwood Limited was to rehabilitate, construct, develop, and manage the properties located at 1400-1412 Seward and 1635 Calvert in Detroit, Michigan. The partnership's property consisted of land, two buildings containing a total of 43 rehabilitation units, and a trash container. The partners elected to, and did, depreciate all rehabilitation expenditures, as defined in section 167(k), under the straight-line method using a useful life of 60 months and no salvage value. In each of the calendar years 1973 through 1976, petitioner Clarence Williams deducted losses in connection with Kirkwood Limited, in the following amounts: 1973
($  76,878)
1974
(   149,491) *
1975
(   121,218)
1976
(   120,000)
Total:
( $ 467,587)
Most of these losses resulted from accelerated low income housing depreciation under section 167(k). On their 1976 return petitioners included a note stating that the loss for 1976 was estimated ($ 120,000 loss and a tax preference item for low income *297 housing depreciation in the amount of $ 117,000), but that "When the year end information is available from Kirkwood Ltd Divd Housing Assoc. amended return will be filed." On November 9, 1977, the Deputy Sheriff of Wayne County, Michigan sold the real property subject to the mortgage between Kirkwood Limited and Citizens Mortgage Corporation to the Secretary of HUD upon the default of covenants and conditions of the mortgage. In other words, Kirkwood Limited defaulted on the mortgage and HUD foreclosed. Petitioners contend that sometime between 1976 and the foreclosure (i.e., prior to November 9, 1977) Kirkwood Limited had abandoned the property. The record does not establish the date of, or any act or acts constituting, the purported abandonment by Kirkwood Limited. [4] *298 In any event, HUD acquired the project on November 14, 1977, at which time the unpaid principal balance of the mortgage was $ 724,166.52, the unpaid accrued mortgage interest was $ 49,235.58, for a total balance due on the mortgage of $ 773,402.10. Kirkwood Limited calculated and reported its income on a calendar year basis and used the accrual method of accounting. Kirkwood Limited's partnership assets, liabilities, and tax liabilities were accurately reflected on its Form 1065, U.S. Partnership Return of Income, for the year 1975. The 1975 partnership return reflected total assets of $ 612,867.31, which assets included a receivable from the limited partner, petitioner Clarence Williams, in the amount of $ 110,000. It also reflected a mortgage interest deduction of $ 20,053.97, *299 an accelerated depreciation deduction of $ 126,922.76, and an ordinary loss for the year of $ 127,598.04. Ninety-five percent of that loss, or $ 121,218.14, was allocated to the limited partner and deducted by petitioner Clarence William on his 1975 return. The 1975 partnership return also reflected that petitioner Clarence Williams' capital account had a negative amount of $ 138,822.59 at the beginning of that year and a negative amount of $ 260,040.73 at the end of that year. Woodson's capital account at the end of the year was a negative amount of $ 32,215.94. The return reflected a total negative partnership capital account of $ 292,256.67. At the time of the foreclosure the fair market value of Kirkwood Limited's partnership property was less than the amount of the outstanding indebtedness encumbering the property, i.e., less than the $ 724,166.52 unpaid principal balance of the mortgage. At the time of the foreclosure, the adjusted basis of Kirkwood Limited's property was $ 175,384.15. The record does not establish that petitioner Clarence Williams was insolvent at the time of the foreclosure on the partnership property. [5] *300 *1000 Prior to the 1975 taxable year, petitioners' tax returns had been prepared by their attorney, James B. Feaster of Detroit, Michigan. During 1975, Mr. Feaster left the Michigan area and no longer represented petitioners. Petitioners' tax returns for the 1975, 1976, and 1977 taxable years were prepared by the accounting firm of Dubrinsky, Einstandig, Heilbrun & Beckwith of Flint, Michigan. Their 1975 and 1976 returns were prepared in May of 1978 and filed in June of 1978; their 1977 return was filed on January 16, 1979. No extensions of time were sought *301 or received for the filing of these returns. Max Dubrinsky, a principal of that accounting firm, did not personally prepare petitioners' 1977 return and had no personal knowledge about the figures and information contained therein. At the time their 1975, 1976, and 1977 returns were prepared, petitioners were new clients of that accounting firm. At the time of the trial in 1989 respondent recomputed the deficiency and addition to tax claimed to be due from petitioners, reducing the deficiency to $ 213,900 and the addition to tax under section 6651(a)(1) to $ 53,475. Those are the amounts now in dispute in this case. OPINION The notice of deficiency made two adjustments to petitioners' 1977 tax, disallowing an interest expense deduction in the amount of $ 30,420 and a net operating loss deduction in the amount of $ 16,854. The interest expense was disallowed for lack of substantiation; the net operating loss deduction was disallowed because petitioners had not established that they had sustained the loss claimed. Respondent, in the notice of deficiency , also determined an addition to tax under section 6651(a)(1) because petitioners' 1977 return was not timely filed and they had *302 not shown that such failure was due to reasonable cause and not due to willful neglect. These issues having been raised in the notice of deficiency, petitioners bear the burden of proof as to them. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). On the other hand, the Kirkwood Limited Dividend Housing Association (hereinafter "Kirkwood Limited") issues raised in respondent's amendment to answer constitute "new matter" as to which respondent bears the burden of proof. Rule 142(a). I INTEREST DEDUCTION
Section 163(a) allows cash-basis taxpayers such as petitioners a deduction for "all interest paid * * * within the taxable year on indebtedness." At the beginning of the trial respondent conceded that petitioners had substantiated interest expense deductions in the amount of $ 7,404.46. Petitioners have not proved any greater amount. In lieu of substantiation, petitioners instead presented the testimony of Max Dubrinsky (hereinafter referred to as "Dubrinsky"), whose accounting firm prepared petitioners' 1975, 1976, and 1977 tax returns. Dubrinsky testified that petitioners were not long-time clients of his firm, and that in the case of persons who were not long-time clients *303 it was the firm's policy and practice to require documentation for items claimed on returns it prepared. From this testimony petitioners ask the Court to infer that therefore there was documentation for all of the interest expense deductions claimed on their return and that the documentation was sufficient to prove the items claimed. That is sheer, baseless speculation in which this Court will not indulge. Neither the Internal Revenue Service nor this Court is required to accept a tax return preparer's mere ipse dixit that the documentation he has relied upon is sufficient to substantiate either the amount or the deductibility of the item claimed. That is so when the substantiating documents themselves are available for the Court to review and evaluate. That is certainly so where, as here, most of the substantiating documents, if they ever existed at all, have never been produced. See n.2, supra. The usual policy and practice of an accounting firm does not constitute evidence that substantiating documentation exists or if it exists that the documentation adequately proves the amount and the deductibility of the item claimed. Moreover, here Dubrinsky did not personally prepare *304 petitioners' 1977 tax return, and he had no personal knowledge of the figures and information contained in that return. Petitioners have failed to carry their burden of proof. They have not established that they are entitled to interest deductions in any amount greater than the amount respondent has conceded. II NET OPERATING LOSS DEDUCTION
As to the 1976 net operating loss that petitioners deducted on their 1977 return, there is no evidence in the record except (a) Dubrinsky's testimony as to his firm's policy and practice in preparing clients' tax returns and (2) petitioners' 1975, 1976, and 1977 tax returns themselves. If all of the figures on these three tax *1001 returns were correct, it would appear that the return preparer has made a correct mathematical computation of the net operating loss and has given proper effect to the various modifications required by section 172(d). See n.3, supra. However, there is no evidence that the figures in the tax returns are correct. As discussed above, the policy and practice of an accounting firm of requiring documentation from new clients is not a substitute for evidence. Also, a tax return is merely a statement of a taxpayer's position *305 and is not evidence of the correctness of the figures and information contained therein. Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974); Seaboard Commercial Corp. v. Commissioner, 28 T.C. 1034, 1051 (1957). Thus, petitioners have not proved either the fact or the amount of any net operating loss for 1976. Moreover, normally net operating losses are first carried back for three years and if not completely absorbed by the carrybacks are then carried forward for seven years. Section 172(b)(3)(C), as in effect for the years pertinent to this case, provided that a taxpayer "may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year ending after December 31, 1975." Since petitioners are attempting to carry a claimed 1976 net operating loss over to 1977, they rely on that election procedure. However, there is no evidence of any such election having been made by petitioners as to the 1976 loss. There has been neither literal nor substantial compliance with the requirements of the statute and regulations. Compare Young v. Commissioner, 83 T.C. 831 (1984), affd. 783 F.2d 1201 (5th Cir. 1986). *306 More critically, however, section 172(b)(3)(C) expressly requires that any such election "shall be made by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect * * *." Petitioners' 1975, 1976, and 1977 returns were filed late and hence they cannot satisfy this clear statutory requirement that any election must be made by the due date for filing the return. For all of the above reasons, petitioners have failed to sustain their burden of proof as to the net operating loss deduction. III GAIN ON HUD FORECLOSURE ON PARTNERSHIP PROPERTY
HUD foreclosed on the Kirkwood Limited partnership's property on November 9, 1977. At that time the unpaid principal balance of the nonrecourse mortgage on the property was $ 724,166.52. The partnership's adjusted basis in the property was $ 175,384.15. Respondent argues that the partners thus realized a gain of $ 548,782.37 that is to be allocated between petitioner Clarence Williams and the general partner, Marcus Woodson , and that is to be further allocated between ordinary income and capital gain income. Other than contending that respondent *307 has the burden of proof on the Kirkwood Limited issues and has failed to carry his burden, petitioners have not clearly articulated any position on these issues. [6] *308 Petitioners on brief for the first time advance some new arguments that are lacking in any factual support and are rather peripheral to the basic issues before the Court. [7] *309 Petitioners' arguments on brief are not a substitute for evidence in the record, and respondent has no burden to negate petitioners' *1002 belated and baseless speculation. In other words, respondent has more than made a prima facie case. Thus, petitioners have the burden to go forward on any issues in the nature of affirmative defenses, particularly as to affirmative defenses peculiarly within the personal knowledge of petitioner Clarence Williams. See n.7, supra. A foreclosure constitutes a "sale or exchange" for purposes of Federal income taxation. Helvering v. Hammel, 311 U.S. 504 (1941); Allan v. Commissioner, 86 T.C. 655 (1986); Middleton v. Commissioner, 77 T.C. 310 (1981), *310 affd. per curiam 693 F.2d 124 (11th Cir. 1982); Freeland v. Commissioner, 74 T.C. 970 (1980). The amount realized on such a sale includes the balance of the nonrecourse mortgage debt. Crane v. Commissioner, 331 U.S. 1 (1947). That is true even if the nonrecourse mortgage debt exceeds the fair market value of the mortgaged property. Commissioner v. Tufts, 461 U.S. 300, 317 (1983); Millar v. Commissioner, 67 T.C. 656, 600 (1977), affd. on this issue 577 F.2d 212, 214-216 (3d Cir. 1978); Woodsam Associates, Inc. v. Commissioner, 16 T.C. 649, 654-655 (1951), affd. 198 F.2d 357 (2d Cir. 1952); Mendham Corp. v. Commissioner, 9 T.C. 320, 323-325 (1947). Kirkwood Limited (the mortgagor) received the loan proceeds tax free and that nonrecourse mortgage debt was included in the basis of the partnership property for depreciation and other tax purposes. The nonrecourse mortgage amount, here $ 724,166.52, must be included in the amount realized by the partnership upon foreclosure, which after deduction of the adjusted basis of the property, here $ 175,384.15, results in a gain of $ 548,782.37. Petitioner Clarence Williams' distributive share of that gain is 95 percent, which is to be apportioned *311 between ordinary income and capital gain income. [8]
IV LATE FILING ADDITION Petitioners' 1977 tax return was not filed until January of 1979, and they neither sought nor received an extension of time for the filing of that return. Respondent determined an addition to tax under section 6651(a)(1) for their failure to file their return within the time prescribed by law. Petitioners have the burden to establish that the late filing was due to reasonable cause and not due to willful neglect. Richardson v. Commissioner, 72 T.C. 818, 826-827 (1979); Fischer v. Commissioner , 50 T.C. 164, 177 (1968). Petitioners contend that the late filing was due to their inability to obtain information in regard to Kirkwood Limited and their search for a return preparer. Petitioners' alleged search for a return preparer is not reasonable cause. Petitioners' former attorney, James B. Feaster, had prepared their returns before 1975. However, Mr. Feaster left the Detroit, Michigan area in 1975, and petitioners did not file their *312 1975 or 1976 returns until June of 1978, some two and one-half to three years later. The Court does not believe that petitioners could not locate a new return preparer more promptly. Moreover, the return preparer for 1977 was the same accounting firm that prepared the 1975 and 1976 returns in May of 1978. There is no explanation in the record as to why there was an additional seven-month delay before the 1977 return was filed. Petitioners' argument that they were trying to obtain information from Kirkwood Limited is also unpersuasive. On the 1976 return, the loss deduction claimed in connection with Kirkwood Limited was estimated, with a note that an amended return would be filed when more specific information became available. A similar explanatory note as to any gain could have been placed on the 1977 return, but when filed, that return instead was totally silent as to Kirkwood Limited. The record does not establish that Max Dubrinsky or any other tax adviser or accountant advised petitioners to ignore the gain. Petitioners' explanations for their late filing do not constitute reasonable cause and do not show that the late filing was not due to willful neglect. A more likely *313 explanation came from the accounting firm principal, Max Dubrinsky, who candidly testified that petitioners were not always cooperative and that his firm had difficulty getting information from petitioners. That difficulty in getting information was not limited to just the matter of Kirkwood Limited, but extended to information for itemized deductions and information for income items. Dubrinsky testified "They wouldn't give us the information * * * We couldn't get it, and on several occasions, we asked them to leave the office." Thus, petitioners can hardly claim reliance on tax professionals or accountants as an excuse for their late filing. The record does not establish that the accounting firm gave petitioners any legal or tax advise. Moreover, reliance on an accountant or a tax adviser does not excuse the failure to make a timely filing of a tax return. United States v. Boyle, 469 U.S. 241 *1003 (1985). The result might be different if an accountant or tax adviser advised a taxpayer that no return need be filed at all. Estate of Paxton v. Commissioner, 86 T.C. 785, 819-820 (1986); Jackson v. Commissioner, 86 T.C. 492, 538-539 (1986), affd. 864 F.2d 1521 (10th Cir. 1989). However, *314 that is not petitioners' contention nor this case. Petitioners have not carried their burden of proof, and the late filing addition under section 6651(a)(1) is sustained. To reflect the concessions and the above holdings, Decision will be entered under Rule 155. Footnotes
1. These interest expense deductions included $ 3,879 claimed on line 18 of Schedule A (home mortgage interest), $ 2,638.35 to Citizens Bank on line 19 of Schedule A, and $ 887.11 to Jamison Street on line 19 of Schedule A. ↩
2. Three documents proffered by petitioners were excluded by the Court for petitioners' failure to comply with the Court's Standing Pre-Trial Order, dated March 14, 1989. This Division of the Court had warned petitioners in May of 1984 to gather their documentation, the scheduled 1984 trial having to be postponed at that time because petitioners filed in bankruptcy a few days before the then long-scheduled trial was to commence. Trial was further delayed by petitioners' again filing in bankruptcy in 1988. When that bankruptcy proceeding finally terminated, the Court on March 14, 1989, calendared the case for trial commencing July 10, 1989. The Standing Pre-Trial Order provided, inter alia, that
Any documents or materials which a party expects to utilize in the event of trial (except for impeachment), but which are not stipulated, shall be identified in writing and exchanged by the parties at least 15 days before the first day of the trial session. The Court may refuse to receive in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown. [Emphasis supplied.] The three documents were neither stipulated nor identified in writing and exchanged. Instead petitioners' pretrial memorandum merely stated that "Evidence of these interest expenses will be produced at trial." At the trial petitioner Samaria Williams testified that the documentation in support of the interest deductions had been lost or misplaced, and sought further time to try to locate the documents. In view of the Court's warning in 1984 and the intervening five-year delay in getting this case to trial, the Court refused to grant any further continuance. Petitioners then produced these three documents. Respondent objected to them because they had not been timely exchanged, with the result that respondent had been deprived of an opportunity to verify the materials. Premises considered, the Court refused to receive the documents in evidence.
3. The method of calculating the 1976 net operating loss appears to be mathematically correct. In determining a net operating loss, salary or wage items are treated as business income and cannot be offset by Schedule A itemized deductions. Schedule A deductions are limited to the amount of nonbusiness income. Sec. 172(d)(4). Similarly, no net operating loss deduction is allowed, hence the deduction of the ($ 20,742). Sec. 172(d)(1). Also, personal exemptions are not allowed. Sec. 172(d)(3)↩. However, while the mathematical calculations appear to be accurate, there is no evidence in the record supporting any of the underlying figures used in the calculations.
*. Figure used in petitioners' trial memorandum.↩
4. In petitioners' pretrial memorandum and at trial, petitioners appeared to draw a distinction between abandonment and foreclosure, apparently relying on some early cases which held that an abandonment did not amount to a sale or exchange whereas a foreclosure constituted a sale or exchange. If that is the argument, those early cases have been rejected by this Court, and we have held that abandonments and voluntary reconveyances likewise constitute sales or exchanges. See Middleton v. Commissioner, 77 T.C. 310 (1981), affd. per curiam 693 F.2d 124 (11th Cir. 1982); Freeland v. Commissioner, 74 T.C. 970↩ (1980). However, petitioners did not discuss abandonment in their post-trial brief and appear to have abandoned any reliance on that theory. In any event, there is no factual predicate for an abandonment argument.
5. In petitioners' pretrial memorandum and at the trial, petitioners appeared to argue the insolvency exception to discharge of indebtedness income. However, this argument is not discussed in petitioners' post-trial brief, and we assume petitioners have abandoned the argument. In any event, it is immaterial whether or not the partnership was insolvent, since any determination of insolvency would be made at the partner, not the partnership, level. Gershkowitz v. Commissioner, 88 T.C. 984 (1987); Slavin v. Commissioner, T.C. Memo. 1989-221↩. There is no evidence that petitioner Clarence Williams was insolvent at the time of the foreclosure or at any other time pertinent to this case.
6. As noted in nn.4, 5, supra, petitioners appear to have dropped, and properly so, both their abandonment argument and the insolvency exception to the forgiveness or discharge of indebtedness income. We agree with respondent that this case does not involve discharge of indebtedness income under either section 61(a)(12) or under United States v. Kirby Lumber Co., 284 U.S. 1 (1931). This case involves gains derived from dealings in property (section 61(a)(3)) and the principles of Crane v. Commissioner, 331 U.S. 1 (1947) and Commissioner v. Tufts, 461 U.S. 300 (1983). See Gershkowitz v. Commissioner, supra, 88 T.C. at 1005-1006 and at 1016↩, where this distinction is discussed. 7. On brief, petitioners argue that respondent's computation of the amount of the deficiency is in error because there was no provision for payment of expenses by petitioner Clarence Williams. However, there is no evidence that he ever paid any expenses of the Kirkwood Limited partnership. Moreover, these are matters peculiarly within the knowledge of petitioner Clarence Williams. This type of argument is in the nature of an affirmative defense which petitioners should have timely raised and as to which they would bear the burden of proof. Similarly, petitioners argue for the first time on brief that the computation is erroneous because "there was no reduction of the recapture by 1% for each full month the property was held over a specified period" under section 1250(a)(1)(B) and (2)(B). If there were sufficient facts in the record, this matter could perhaps be handled in the Rule 155 computations. However, it appears that the initial holding period of 100 full months cannot be satisfied on the facts in this case. Finally, petitioners argue for the first time on brief that respondent failed to establish a relinquishment or loss of a right of redemption to the property and that this "is especially true since the Petitioners have indicated their involvement in arrangements to repossess this very property." To the contrary, the record is totally silent as to any attempts to redeem the property. Again, this belated argument is in the nature of an affirmative defense that should have been timely raised and proved by petitioners. Here, the foreclosure occurred in 1977 and the trial of this case was held in 1989, so any purported right of redemption of the property probably has long since expired. Thus, any purported efforts to exercise some right of redemption, as to which there is not one scrap of evidence in the record, appear to be sheer baseless speculation without any factual foundation.↩
8. Respondent says the application of sections 1231 and 1250 in determining the character of the gain is not in issue in this case. That appears to be the case, but see n.7, supra↩.